(83 App. Div. 123.)

## HARRIS v. HARRIS.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

**1. DIVORCE—EVIDENCE—SUFFICIENCY.**

In a suit for divorce on the ground of adultery, evidence considered, and *held* sufficient to sustain a judgment in favor of plaintiff.

**2. SAME—CONDONATION—KNOWLEDGE OF FACTS.**

On an issue as to whether plaintiff in a suit for divorce on the ground of adultery had condoned the defendant's conduct, the question is not whether plaintiff and defendant had cohabited, but whether plaintiff, with full knowledge of facts sufficient to warrant a belief of guilt, had voluntarily resumed her marriage relations with defendant.

**3. SAME—CONDONATION—KNOWLEDGE OF FACTS—EVIDENCE.**

Where the wife cohabited with her husband after having discovered in her husband's vest a receipted bill for the board of the husband and another woman at a hotel, and after his admission that he was present at the hotel on that date, such cohabitation did not show condonation of any adultery on his part, the husband having denied that he was guilty of adultery, and the wife having no knowledge as to the location and surroundings of the rooms to which the husband and the woman were assigned.

**4. SAME—ACTION—RESIDENCE.**

Code Civ. Proc. § 1756, provides that either a husband or wife may maintain an action for divorce on the ground of adultery where the plaintiff was a resident of the state when the offense was committed and is a resident thereof when the action is commenced. In a suit for divorce plaintiff's father testified that at the time of the acts of the defendant complained of the wife was in the state of Michigan, with her mother. *Held*, that such testimony did not show that plaintiff resided in Michigan at the time.

**5. SAME—RESIDENCE OF PLAINTIFF—EVIDENCE.**

Testimony that witnesses had visited plaintiff and defendant at their home in the state at various times in years preceding the offense and subsequent thereto was sufficient evidence to show the residence of plaintiff and defendant in the state prior to the offense as well as subsequent to the time.

**6. SAME—PRESUMPTIONS.**

Where, in divorce, the status of the parties as residents of the state is established at a time prior to the commission of the offense, a continuance of such status will be presumed, in the absence of evidence to the contrary.

**7. SAME.**

Such presumption is supported by the fact that the parties are shown to have been residents of the state immediately after the offense and at the time of the commencement of the action.

**8. SAME.**

The residence of a husband determines the residence of the wife, though she is absent from him, in the absence of any reason existing for her not living with her husband.

**9. SAME—RESIDENCE OF PARTIES.**

The fact that a wife is absent from the state of the domicile of her husband owing to the illness of her mother does not show that she is at such time a nonresident of the state in which her husband's domicile is situated.

**10. SAME—PLEADING—AMENDMENT.**

Code Civ. Proc. § 723, provides that the court may at any other stage of the action in furtherance of justice amend any pleading by inserting an allegation material to the case, where it does not change the claim or defense, by conforming the pleading to the facts established. *Held,* that where, in divorce, evidence showing the jurisdictional fact that plaintiff was a resident of the state at the time of defendant's adultery is brought out for the most part by defendant's cross-examination of plaintiff's witnesses, and received without objection, the complaint on appeal may be deemed to have been amended to conform to the proofs.

**11. SAME—ALIMONY.**

Where, in divorce, it appears that the husband's income is about $4,500 a year, and the judgment awards plaintiff the custody of four children, an allowance of $2,400 alimony is not excessive.

Appeal from Trial Term, Kings County.

Suit by Blanche H. Harris against Charles T. Harris. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Paul Armitage, for appellant.

Abram H. Dailey (Melville J. France, on the brief), for respondent.

WOODWARD, J. The plaintiff brings this action for an absolute divorce, the papers having been served on the 6th day of June, 1901. The parties were married in Michigan on September 10, 1884, and four children have been born to them. The complaint alleges that the parties were residents of the state of New York at the time the action was instituted, which allegation is admitted by the answer, and the evidence clearly indicates that they were residents of the state at the time of the commission of the alleged acts of adultery on the part of the defendant. Three distinct acts of adultery were charged in the complaint, but upon the trial only one of these was supported by sufficient evidence to take the case to the jury, and upon this one the jury has found that the defendant was guilty as charged. The answer denied the offenses charged, and set up condonation of the first and second adulteries charged, embracing the one found by the jury; but upon this issue the jury also found in favor of the plaintiff, and from the judgment entered the defendant appeals, as well as from an order denying his motion for a new trial.

The offense charged, and which the jury has found to have been committed, was an adultery with an unknown woman at the Hygeia Hotel, Old Point Comfort, Va., on July 2 to July 4, 1899, while the

plaintiff was visiting her mother in Three Rivers, Mich. It is urged on the part of the defendant that there is no competent legal evidence to sustain the finding of the jury that he was guilty of adultery, as alleged, and various authorities, including Winston v. Winston, 165 N. Y. 553, 556, 59 N. E. 273, are cited to show that the evidence in cases of this character should be of controlling force to justify a finding which must result in the dissolution of the marriage con- tract. There is not, as is usually true in cases of this kind, any direct evidence of the actual commission of the offense charged. There are, however, facts and circumstances which, unexplained, and in the light of the common experience of mankind, justify a jury in reaching the conclusion that the defendant has been guilty of the wrong charged. The plaintiff, to establish her case, produced as a witness one Filmore N. Pike, who was the proprietor of the Hygeia Hotel on the date of the alleged adultery, and this witness produced the register of the hotel at that time, which showed the entry of "C. T. Harris and Lady, New York," assigned to rooms Nos. 124 and 126, these being adjoining rooms, with a communicating door between them. The handwriting in which this entry was made was identified by the brother of the defendant, and a letter written by the defendant to his son William Griffith Harris, dated New York, July 1, 1899, in which the defendant tells his son, a lad of 14 or 15 years, that, "I have word to come to Richmond, Va., on a contract to be closed there next Monday, and I am just leaving for the boat," was put in evidence. July 2, 1899, fell on Sunday, and a receipted bill of the Hygeia Hotel for $16.75 for board of Charles T. Harris and his wife for two days and a half was shown to have been found in the pocket of a vest belonging to the defendant; and the plaintiff's father testi- fies that when the defendant was confronted with this charge by the plaintiff in the presence of the witness he admitted that he was present at the hotel on the dates mentioned, and that the circumstances were against him, but he could not explain matters. This witness testified, however, that the defendant denied having been guilty of adultery, and on cross-examination he said that the defendant had promised at some future time to make an explanation of the matter to the plaintiff, intimating that he was not at liberty to tell of the affair at that time owing to the fact that there were others with him whom he could not expose. These facts, in connection with the disposition on the part of the defendant to have questionable relations with other women, which facts were shown by the evidence, and his failure to take the stand and testify upon the trial of the action, are sufficient to justify the conclusion reached by the jury, and the result should not be disturbed.

But it is urged that, if the defendant was guilty as charged, and found by the jury, the act was condoned by the plaintiff, and she cannot be entitled to the relief sought. It is certain that the plaintiff lived under the same roof with the defendant after she had found this receipted bill in his pocket, and there is some evidence that she occupied the same room with him; but there is no denial under oath or other testimony contradicting the plaintiff's sworn statement, made in her complaint, that "she has not voluntarily cohabited with the

defendant since she discovered adultery had been committed by him as aforesaid." On the contrary, a maid servant testifies, in relation to the condition of the beds, that the two used by the parties were separately occupied, and she had never observed anything indicating more than a merely nominal relationship between them. But whether the plaintiff and defendant have cohabited or not is not the real question to be determined. The question is, has the plaintiff, with full knowledge of the facts, voluntarily consented to resume her marital relations with the defendant? We think the evidence does not necessarily reach this result. The uniform rule is that some knowledge must exist sufficiently substantial upon which to base a belief, and usually there must be some means of making legal proof of the commission of the offense before condonation will be implied from the cohabitation. Merrill v. Merrill, 41 App. Div. 347, 350, 58 N. Y. Supp. 503, and authorities there cited. It cannot be said that the plaintiff had such knowledge at the time she went to live with her husband in Brooklyn in the fall of 1899, although it may be conceded that she had expressed a belief in his guilt. She had the receipted bill; but this, without connecting evidence, was by no means conclusive. She had also the admission of her husband that he was present at the Hygeia Hotel on the date of the bill, but he denied having been guilty of the act of adultery, and, in the absence of the evidence of the location and surroundings of the rooms to which the defendant and his unknown companion were assigned, and the defendant's misleading letter to his son, the plaintiff, as the mother of defendant's children, had a right to rely upon his denial, and his promise to make an explanation when he could do so without injustice to his friends. As was said in the case of Deisler v. Deisler, 59 App. Div. 207, 216, 69 N. Y. Supp. 326, 332: "The condonation cannot, therefore, be said to have been made of the offense of adultery. This was denied, and, although the defendant knew of the facts which were calculated to make him suspicious, he was not obliged to believe this evidence in the face of the denial of his wife." See Shackleton v. Shackleton, 48 N. J. Eq. 364, 369, 21 Atl. 935, 27 Am. St. Rep. 478. In this case it was claimed that the wife had condoned the offense, and, although it appeared that at the time of the cohabitation the wife believed the husband guilty of infidelity, she was without legal evidence to support her belief, and the court held the cohabitation insufficient to establish condonation. While it may be that the jury might have found that there was a condonation, we are of opinion that it cannot be said, as a matter of law, that the plaintiff, with a full knowledge of the facts, had voluntarily resumed her wifely relations; and, the evidence being sufficient to support the judgment, it should not be disturbed.

But it is urged that, as the parties were married in the state of Michigan, and as the alleged offense was committed in the state of Virginia, and as it is not alleged or proved that the plaintiff was a resident of the state of New York at the time the alleged offense was committed, the courts of this state are without jurisdiction to render the judgment herein. Section 1756 of the Code of Civil Procedure provides that either a husband or wife may maintain an

action for divorce upon the ground of adultery "where both parties were residents of the state when the offense was committed," and "where the plaintiff was a resident of the state when the offense was committed, and is a resident thereof when the action is commenced." The complaint alleges and the answer admits that both the plaintiff and defendant were residents of the state at the time this action was commenced on the 6th day of June, 1901, and the only possible question is as to the residence of the plaintiff, who was married without the state, on the first few days of July, 1899, the time of offense committed within the state of Virginia. The defendant urges that it appears from the evidence of the plaintiff's father that at the time she was a resident of Three Rivers, Mich., but on turning to the folio cited we find only an incidental statement that the plaintiff, Mrs. Harris, said that "while she was in Three Rivers, Michigan, on July 1, 2, 3, 4, 1899, with her sick mother," etc., the defendant had been at Old Point Comfort with the unknown woman. This is a long way short of establishing plaintiff's residence in Michigan, while the evidence is undisputed, and is brought out by defendant's cross-examination of the plaintiff's witness William R. Clark, that after July, 1896, he visited Mr. and Mrs. Harris at their home in Alfred; that he visited them there from time to time during the years 1896, 1897, and 1898; and that in July, 1900, he visited them in Brooklyn, spending two weeks at their home at 604 Fifth street. This was certainly sufficient evidence of the residence of the parties to this action in the state of New York prior to the alleged adultery in July, 1899, as well as subsequent to that time; and the plaintiff's mother testified, without objection, that she visited at the home of her daughter and the defendant at Alfred, N. Y., during the winter of 1896 and 1897, and this is nowhere disputed. The status of the plaintiff and defendant as residents of the state of New York is thus established at a time prior to the commission of the alleged offense, and the rule is familiar that, where the status of an individual is fixed, the law presumes a continuance of the condition until it is shown to have been changed. Nixon v. Palmer, 10 Barb. 175; Mitchell v. U. S., 21 Wall. 350, 353, 22 L. Ed. 584; 22 Am. & Eng. Ency. of Law, 1241, and authorities cited in note 8. This general presumption is supported by the fact that the parties were shown to have been residents of the state immediately after the offense and at the time of the commencement of this action, and by the general rule of law that the residence of the husband, which is not suggested to have been out of this state, determines that of the wife. While it is true that the necessities of a given case may enable a wife to gain a domicile apart from that of her husband, there is no evidence of any reason existing in the early part of July, 1899, why the plaintiff should not be actually living with her husband, though temporarily with her sick mother in the state of Michigan. It was during the absence of the wife, for which no other reason appears than that of the illness of her mother, that the defendant was guilty of the offense set forth in the pleadings, and which has been established by the evidence; and the suggestion that there is any lack of proof of the jurisdictional facts necessary to maintain this action is without force. The evidence

having been received without objection, and having been brought out for the most part by defendant's cross-examination of plaintiff's witnesses, the pleadings may, for the purpose of supporting the judgment, be deemed to have been amended to conform to the proofs, under the provisions of section 723 of the Code of Civil Procedure. At the time of the offense there was no occasion for the plaintiff to be living apart from her husband, so far as the evidence shows, and the exception to the rule that the domicile of the husband determines that of the wife is based upon the necessity of permitting a different domicile for the protection of the rights of the wife, and not for the purpose of working a wrong upon her. See Atherton v. Atherton, 155 N. Y. 129, 134, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650, citing Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129. So long as the plaintiff was living with her husband she was certainly entitled to his residence for the purpose of protecting her rights, and the evidence shows this condition certainly up to 1898, one year before the offense, and there is nothing to overcome the presumption that this condition continued down to and including the very days upon which, the defendant was guilty of the acts which disturbed the relations of these parties and brought about this action, and there can be no legal doubt of the rights of the plaintiff within this jurisdiction under the facts as thus established. The court had jurisdiction. See De Meli v. De Meli, 120 N. Y. 485, 491, 24 N. E. 996, 17 Am. St. Rep. 652, and authorities there cited.

But it is urged that the permanent alimony of $2,400 per year granted to the plaintiff was excessive. The defendant stated in an affidavit in this action that his income could not possibly exceed $4,800 per year, and the treasurer of the Caladen Roofing Tile Company, of which the defendant was president, testified that his income from the company for three years past had been $4,500, with some other matters bearing upon his condition financially. The judgment awards the plaintiff the custody of her four children, and it does not seem unreasonable, under the circumstances, to allow her one-half of the defendant's income to enable her to discharge the duties which she thus assumes toward his children.

The judgment and order appealed from should be affirmed, with costs. All concur.