was called for as needed. The failure of the manufacturing company to call for the whole $75,000 inured to the benefit, rather than injury, of the defendant.. The defendant was the treasurer of the manufacturing company during all the time the advances were being made, and we may assume the moneys advanced on the note passed through his hands, and he knew when and in what amounts the moneys were advanced, though it is agreed that the requests therefor were made by Cobb, managing director of the company. The treasurer would naturally receive the money, and it would be disbursed by checks bearing his signature. This consideration would seem a sufficient answer to the defendant's contention that he should not be held liable in any event for the $5,000 advanced June 1, 1900, and the $5,000 advanced June 19th. If he knew of these advances, and made no objections, he would be regarded as consenting thereto, though made after the maturity of the note.

This action is equitable in its nature, and both parties ask that equity be done. The defendant should not be relieved from liability on his agreement, nor should he be required to pay his whole $10,500 in purchase of his whole $14,000 of bonds and 600 shares of stock. There would be no equity in this, the whole $75,000 not having been advanced. He should only be required to pay his proportionate share of the moneys actually advanced, $50,000, which would be $7,000 and interest thereon from February 17, 1905, the time of the tender and demand. He should have the benefit of his, proportionate share of the bonds and stock upon making such payment, being two-thirds thereof.

Judgment should therefore be ordered in favor of the plaintiff as hereinbefore suggested. All concur.

---

## PERCIVAL v. PERCIVAL

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

1. DIVORCE—GOOD FAITH—BURDEN OF PROOF.

Where the issue of plaintiff's good faith is directly raised by the defendant's proof in a divorce case, the burden of meeting the issue is on the plaintiff.

2. WIFE—DOMICILE—PRESUMPTION.

After a valid decree of separation of husband and wife has been rendered, there is no presumption that the wife's domicile follows that of her husband.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Domicile, § 26.]

3. EQUITABLE ESTOPPEL—SUIT FOR DIVORCE.

In a suit by plaintiff for divorce from his wife, who had been previously granted a decree of absolute divorce in another state, it appeared that plaintiff, two months before he commenced his suit, testified in a partition suit pending in the New York Supreme Court, in which he and defendant were defendants, that defendant was not his wife. He was shown an exemplified copy of the decree of the court in which she obtained her decree of divorce, and testified that he was the defendant mentioned in that decree, and that he had never married since the granting of the decree. His attorney offered the decree in evidence, and on the faith of the decree the court decreed that the wife had no interest in his estate. *Held*, that

plaintiff was not estopped by his action in the partition suit from questioning the validity of the foreign decree of divorce, as the principle of equitable estoppel cannot be invoked to confer jurisdiction on a foreign tribunal.

**4. SAME—FOREIGN DECREE—VALIDITY—RESIDENCE OF PLAINTIFF—BURDEN OF PROOF.** ·

Where plaintiff in a divorce proceeding was shown to be a man of roving disposition, and brought the suit 15 years after a decree of separation of the parties by the courts of New York had been rendered, the burden was on him to show that he was a resident of New York 9 years after the decree was rendered, when the defendant obtained an absolute decree of · divorce in another state, to entitle him to claim the benefit of the policy of the state of New York denying validity to decrees of divorce rendered by other states against residents of New York without personal service; and plaintiff's failure to show his residence at that time was fatal to his right to maintain the action.

Appeal from Special Term, Kings County.

Action by Edward S. Percival against Julia A. Percival for divorce. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The following is the opinion of the court below:

The decision of this case involves the validity of a decree of divorce absolute obtained by the defendant against the plaintiff in the Court of Chancery of New Jersey in the year 1896 on the ground of willful, continued, and obstinate desertion for more than two years, a ground for absolute divorce recognized under the laws of the state of New Jersey, but not by the laws of the state of New York. The divorce in question was not obtained by service of process on the defendant (the plaintiff in this action) within the state of New Jersey, nor is there any pretense that he made any appearance in the New Jersey court. He alleges that he was at the time a citizen of this state, and he denies the validity of the New Jersey decree. The wife, relying on the New Jersey decree, married the person named as co-respondent in the case at bar, and has been living with him for several years as his wife. The defendant here, conceding the rules of law laid down in repeated decisions in this state, that foreign divorces obtained without personal service of process within the foreign jurisdiction have no validity here, avers that this case presents a new situation in the apparently interminable complications arising from the conflict of state laws on this subject. It is claimed that this case presents for decision the questions reserved by the Supreme Court of the United States in Bell v. Bell, 181 U. S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804, Streitwolf v. Streitwolf, 181 U. S. 179, 21 Sup. Ct. 553, 45 L. Ed. 807, · and Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366, that in this case there is no question of the bona fides of the defendant's domicile in the state of New Jersey at the time she applied to the courts of that state for a divorce; that there was at the time no matrimonial domicile by reason of a decree of separation which had been entered in her favor, because of nonsupport, in the Supreme Court of the state of New York in 1887—nine years before the New Jersey decree; and it is argued by the learned counsel for the defendant that this foreign decree is entitled to recognition here, and is valid, and that it in no way conflicts with the policy of this state in maintaining the marriage contract as against the judgments of courts of other states, where it is found by our own courts and under our own law that the court in the foreign state was without jurisdiction of the person of the nonresident party to the action. It is alleged that in the case at bar those considerations of public morality which justify the intervention of the state between the parties and forbid them, even by their voluntary action, appearance or consent, to confer jurisdiction on foreign tribunals in matrimonial actions, really makes for this defendant; that good conscience and all equitable rules and principles demand that the decree of the New Jersey court should be here recognized under the provision of the Constitution of the

United States (section 1, art. 4) that "full faith and credit should be given in each state to the public acts, records and proceedings of every other state." The facts presented here appear to call upon the court to sustain her contention, unless the courts of this state have definitely and clearly decided against her claim. In 1886, Mrs. Percival, the defendant here, brought suit against her husband, the plaintiff here, in this court, to obtain a separation because of abandonment and failure to support her. She alleged a marriage by agreement—a so-called common-law marriage—in 1866, and that they had lived together openly as husband and wife for twenty years. Percival answered her complaint, denying that she was his wife, alleging affirmatively that she had lived with him as his mistress, "with full understanding that such was the relation between the parties." The case was tried in New York county in open court. It appeared that Percival introduced her to his family, lived with her in the home of his parents, joined with her in the execution of legal papers as her husband, and the trial justice at Special Term found in her favor. She had judgment that she became his wife in 1866, that she had "conducted herself as a true and pure wife" to him during the twenty years preceding the decree, and decreeing a separation between the parties. Percival appealed to the General Term in the First Department, where the judgment below was affirmed, and again to the Court of Appeals, where he was again unsuccessful. Percival v. Percival, 47 Hun, 634, affirmed 124 N. Y. 637, 26 N. E. 540. Whatever view we may entertain as to the propriety or ethics of nonceremonial marriages—common-law marriages, as they are called—they are recognized in law and in morals. This court at Special and General Term found the husband, the plaintiff here, guilty of wrong and perfidy towards the woman, his wife, accentuated by the false accusations made against her in his pleading. So far as this court is concerned, we are bound by the judgment and findings that she became his wife in 1866, and lived with him honestly and properly for twenty years, when he left her without cause, with the result that the court separated them forever. He began the suit at bar against her in 1902, fifteen years after the judgment so rendered against him, alleging that within two years prior to the commencement of the action she had committed adultery, and was openly living with the alleged co-respondent as his wife. It is this complaint which is now on trial. The defendant, Mrs. Percival, offers in evidence the decree of absolute divorce in the New Jersey Court of Chancery entered in 1896—nine years after the separation under the New York judgment, six years before the date of the commencement of this action. Its admission in evidence is objected to by the plaintiff, Percival, on the ground that it is invalid as against him; that he has been at all times a resident of New York state; that he never appeared in the New Jersey action, nor was represented there. He offers no evidence as to his residence between 1887 and the date of the beginning of this action, or as to his bona fides in bringing this action. He offers no proof as to when he became aware of the alleged wrongdoing on the part of the defendant, or as to the absence of connivance on his part. Doubtless such proof may not be requisite in cases where the defendant appears on the trial (McCarthy v. McCarthy, 143 N. Y. 235, 38 N. E. 288; Lowenthal v. Lowenthal, 157 N. Y. 236, 51 N. E. 995; Evans v. Evans, 27 Misc. Rep. 10, 57 N. Y. Supp. 274); but the issue of good faith is always before the court in cases of this kind, and the courts have not relieved plaintiffs of the burden of meeting these issues where they are directly raised by the defendants' proofs on the trial. Nor does the plaintiff attempt to offer any evidence as to the defendant's residence during the period from 1887, when the court granted her a decree of separation. If the New Jersey decree has any force, if it is prima facie proof of the fact therein recited that Mrs. Percival had been a bona fide resident of New Jersey for nine years, supporting herself and conducting business there openly, then the plaintiff here has not attempted in any way to negative the prima facie case thus made out. On the contrary, he stands on the proposition that this court, in 1887, found that the woman was a resident of New York, and that the residence so established is presumed to continue; citing Harris v. Harris, 83 App. Div. 123, 82 N. Y. Supp. 568; De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996, 17 Am. St. Rep. 652. I do not think any such presumption attaches on the facts in this case  Mr. Justice Woodward,

writing in the Harris Case, says: "The necessities of a given case may enable a wife to gain a domicile apart from that of her husband." In the De Meli Case Justice Bradley refers to the absence of any evidence to-repel the presumption. The case at bar presents a different state of facts. Where there is a valid decree of separation from bed and board, I do not think the presumption that the wife's domicile follows that of her husband obtains. The Appellate Division in this department recognizes the possibility of separate domicile in the Harris Case, supra. The Supreme Court of the United States says: "The wife may have a separate domicile after·the husband's delictum." Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604. Slight evidence, it seems to me, ought to be sufficient to put the plaintiff on his proof in a case like that at bar. But, in addition to the prima facie force of the New Jersey decree, if it has any force, there is evidence here which, to my mind, clearly overcomes this presumption relied on by the plaintiff. In March, 1902, two months before he commenced this suit for divorce, the plaintiff, Percival, testified in a partition suit pending in this court in New York county, in which he was a defendant, and in which the defendant here was also a party defendant, designated as "Julia A. Percival, formerly his wife." In that case on the trial this plaintiff was represented by counsel. He was called as a witness on his own behalf to prove that the defendant here was not his wife, and was not entitled to dower rights in his interest in the real estate sought to be partitioned. He was shown an exemplified copy of the decree of the New Jersey Court of Chancery, by which this defendant was awarded an absolute divorce from him in 1896. He testified that he was the defendant mentioned in that decree, and that he had never married since the granting of the decree. His attorney offered the New Jersey decree in evidence on his behalf. It was received, and on the faith of that adjudication this court decreed that the defendant here had no right or interest in his estate. One month later he swore to the complaint in this case, charging that the defendant was his wife. The learned counsel for Mrs. Percival argues that the plaintiff is estopped by this action from questioning the New Jersey decree. This contention is not sound. The principle of equitable estoppel cannot be invoked to confer jurisdiction on a foreign tribunal in a divorce suit. Todd v. Kerr, 42 Barb. 317; cited by Mr. Justice Hirschberg in Starbuck v. Starbuck, 62 App. Div. 437, 71 N. Y. Supp. 104, where the authorities on this subject are collated. The Court of Appeals in the Starbuck Case, 173 N. Y. 503, 66 N. E. 193, 93 Am. St. Rep. 631, held that a party would not be heard to impeach a foreign decree or judgment which she had procured for her own benefit in a proceeding in this state to settle her dower rights. But it seems to me that this decree in the New Jersey court, coupled with the use made of it by the plaintiff here for his own benefit in 1902, took the case at bar out of the realm of presumption as between these parties. I think that the lapse of time existing between the decree of separation in 1887 and the commencement of this action in 1902, together with the proofs in this case, put the burden upon the plaintiff not only to establish residence of the parties in this state at the time this action was commenced, but that to avoid the New Jersey decree he was bound to show that he was himself domiciled in the state of New York at the time the New Jersey court assumed jurisdiction of his person. On the facts here I do not think the court here should indulge in presumption that this man, who, as appears by the evidence, was of a roving disposition, maintained a domicile in New York for fifteen years. I think he was bound to show that in 1896 he was a bona fide resident of this state, and entitled to claim the benefits of the policy of this state relative to foreign judgments of divorce. It is shown that he resided originally in Maine; that he enlisted in the United States army from that state; that he deserted, was dishonorably discharged; that he afterwards resided in Pennsylvania. In 1875 he signed a mortgage reciting that he is a resident of Philadelphia. Of course, all this is prior to 1887, the date of the decree of separation which adjudged him a resident of New York state, and it may be argued that the record of the New Jersey divorce suit shows that the process was mailed to him at a business address in Broad street, New York City. But if we refer to the New Jersey decree at all, we must take the proof in its entirety, which showed the plaintiff here to have no settled or

known domicile, and his uncle testifying for the plaintiff that he had no regular home. On these facts the counsel for the defendant claims that she is entitled to judgment. He presents an able argument on the injustice and hardships of a judgment branding the defendant as an adulteress, and invalidating her marriage entered into upon the faith of the New Jersey decree. But I think these arguments are unavailing under the well-settled policy of this state as announced in the decisions referred to by Mr. Justice Hirschberg in the Starbuck Case, supra. Nor can I assent to the proposition that a trial judge should disregard the settled policy of our state because of its alleged inconsistencies, because in this state divorces are decreed against nonresidents without personal service, or because of the claim advanced that the United States Supreme Court in Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, and Andrews v. Andrews, supra, intimates that when the question of the validity of a decree rendered in a case where a bona fide domicile is established in the foreign state is presented, and the case is void of suggestion or intimation of bad faith, it will be held that such decrees are binding everywhere. Until this question, which it is claimed has been reserved by the federal court in the Bell, Streitwolf, and Andrews Cases, cited, has been decided in the United States Supreme Court, or in our own courts I think it would be contrary to precedent and to the doctrine of stare decisis for a trial judge to attempt to vary from the rule which is supported to my mind by every consideration of good morals and decency and which justifies the court in brushing aside forms and shams and ascertaining for itself the truth, and thus settle the question of the foreign jurisdiction. And as the courts have said, the policy of this state is enforced for the protection of its own citizens domiciled here, whose status should not be changed by foreign decree. Nor do I agree with the defendant's claim of estoppel, for the reasons already advanced. But it seems to me that when this principle of state policy is invoked the party invoking it must bring himself within its protection. I think, when he attacks a foreign decree entered against him without personal service on the ground that the foreign court was without jurisdiction, he must show that he was a resident of the state of New York at the time the foreign decree was obtained. I will not say that this domicile may not be shown indirectly, or that the court may not indulge in presumptions based on the recitals in judgments or the like; but, where, as in this case, there is a hiatus of fifteen years between the judgment upon which he relies as establishing his domicile in 1887 and the beginning of his divorce suit in 1902, and where the foreign litigation has occurred in the meantime, where there is no intimation or suggestion of bad faith on the part of the plaintiff in the foreign state, no attempt to evade our laws or escape their effect; and in such case I hold that the court should not indulge in presumptions to condemn the defendant. None of the salutary reasons for rigid supervision of foreign decrees of divorce are interfered with or questioned by enforcing such a rule. The court still disregards the foreign decree, if, upon its examination of the facts, it is satisfied that an attempt has been made to dissolve the marriage contract, contrary to the principles so clearly enunciated in our own state. But with the conflict of the law with regard to divorce among the states, I know of no reason why a litigant in the situation of this plaintiff, whose action, ever since he appeared in this court in 1887 in the separation suit, has been characterized by such a flagrant disregard of equity and good conscience in his dealings with the defendant, should obtain the protection of our state policy without proving that he is entitled to it, and that the burden was on him to show that he was a resident of this state and domiciled here when the defendant procured her decree in 1896. This he has not done, nor has he shown to the court under rule 72 that at the date of commencing his action five years had not elapsed since his discovery of the alleged adultery. On the proofs here I find that these issues were presented. A judgment in his favor would, in my opinion, be unjust, and a great wrong to the defendant. In many states of the Union the policy of our own state in the matter of foreign decrees of divorce is not recognized. The public scandal occasioned by this diversity of views on this subject of marriage and divorce, which, as the courts have said, so vitally concerns public morality, and is so interwoven with our civilization, and the laxity in certain jurisdic-

tions in dissolving the marriage tie more as a matter of course than anything else, have well justified the censure which the courts of this state have continually visited on those who seek to avoid or disregard our laws. In People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274, the party resident here was convicted of bigamy because of remarriage in reliance on a foreign decree procured by his wife. I have this policy, with which, I take occasion to say, I am personally most heartily in sympathy, fully in mind, and yet I think a court should not shut its eyes to the facts, and allow an evildoer to pose as the champion of good morals and decency, which he has openly violated. I think on the proof here it should be held that he has not made out a case. If, when the question is presented to them, the courts of this state and of the United States shall sustain the contentions advanced by the defendant here that bona fide domicile in a foreign state after the decree of separation here, found as a fact in this court, and absolute good faith without intimation of intention to avoid our laws, is sufficient to entitle the foreign decree to force here, the trial courts will be justified in accepting the arguments presented by the defendant. I do not think I can accept them under the decisions referred to. But I will not give judgment for this plaintiff on the facts here, and direct that the complaint be dismissed, with costs.

Judgment for defendant dismissing complaint, with costs.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

Sanford S. Gowdey, for appellant.
W. Gibbes Whaley, for respondent.

PER CURIAM. Judgment affirmed, **with costs, on the opinion** of Kelly, J., at Special Term.

---

HOGG et al. v. ROSE et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. APPEAL—RECORD—OPINION OF TRIAL COURT.
    Where an order appealed from, making distribution of money on a sale of real estate, provided that the amount fixed was determined in the manner set forth in the written opinion of the court, the opinion could be referred to by the appellate court to ascertain how the distribution was made.

2. JUDICIAL SALES—LAND SUBJECT TO MORTGAGE—DISTRIBUTION OF PROCEEDS.
    Where three parcels of land, only two of which were subject to a mortgage, were to be sold, and the proceeds apportioned, it was error to charge any part of the mortgage to the parcel which was not subject thereto, in making the distribution.

Appeal from Special Term, Cattaraugus County.

Action by William Hogg and another against Eliza Rose and others; George T. Hogg, impleaded. From a portion of an order making distribution of the proceeds of sale of real estate, plaintiffs appeal. Modified.

Argued before McLENNAN, P. J., and WILLIAMS, HISCOCK, and STOVER, JJ.

Warring & Warring, for appellants.
George T. Hogg, for respondents.