(55 Misc. Rep. 538)

POST v. POST.

(Supreme Court, Special Term, New York County. August 3, 1907.)

1. DIVORCE—TEMPORARY ALIMONY—DISCRETION OF COURT.
   Temporary alimony will not be awarded in a divorce suit, unless the court has reason to believe that complainant may succeed in her action.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, § 617.]

2. SAME—JURISDICTION OF CAUSE OF ACTION.
   Though the validity of a decree of divorce, obtained in Texas without personal service of process on defendant wife in that state, the same having been personally served in another state, cannot be recognized in New York on the ground alone that the decree was valid in Texas, and that the wife believed such decree to be effective everywhere and in mutual good faith remarried with another, yet the divorce will be held valid in New York, if Texas was the domicile of the husband and also of matrimony,

and the wife was unjustifiably absent therefrom, since the domicile of a husband being also the domicile of matrimony the courts of that state may, in virtue of the wife's duty to be at the matrimonial domicile, disregard an unjustifiable absence therefrom, and treat the wife as having her domicile in that state for the purpose of dissolution of the marriage, and render a decree dissolving the same, which will be binding on both parties and entitled to recognition in all other states.

Divorce by Emma C. Post against Augustus G. Post. Plaintiff moves for alimony and counsel fees. Motion granted.

Will H. Crow, for plaintiff.

Henry C. Eldert, for defendant.

DAYTON, J. The plaintiff moves for alimony and counsel fees. The action is brought for a separation upon allegations of defendant's cruel and inhuman conduct toward the plaintiff. The answer contains a general denial of these allegations. There are no allegations against the plaintiff of improper conduct, nor is there anything in the papers before me which would indicate that she has in any way failed to perform her entire duty to the defendant, except the statement that she was unwilling to live in an apartment and preferred a hotel, defendant being unable, as he states, to rent an entire house and maintain a household of the character desired by the plaintiff. Defendant sets up in his answer a decree of annulment of a former marriage of plaintiff to one Halliday, which decree was based upon the alleged invalidity of a divorce for abandonment secured by plaintiff's first husband in Texas. The plaintiff was first married January 5, 1871, to John S. Keaghey, in the city of New Orleans, La. Three children were born of this marriage. Mr. and Mrs. Keaghey subsequently moved to the state of Texas, but at what date I am unable to determine from the papers. Mrs. Keaghey (the present plaintiff) left her husband in 1878 and never returned to him. In March, 1882, Keaghey commenced an action for divorce on the ground of abandonment in the district court of Jasper county, Tex. The summons, notice of commencement of the suit, and a certified copy of the complaint were personally served on the defendant in that action (the plaintiff herein) in the city of New Orleans, La. She did not defend, however, and after her appearance by assigned counsel under the laws of Texas a decree of absolute divorce was awarded to her then husband. On August 4, 1895, plaintiff married Daniel Halliday in the city of New York. On April 14, 1897, she commenced an action in this state against said Halliday for a separation. Halliday, in defending that action, alleged that the plaintiff had a husband living at the time of her marriage to him, asserting that the Texas (Keaghey) divorce could not be recognized in this jurisdiction because she, the defendant in the Texas action, had not been personally served with process within that state. The action was tried before the late Justice Leslie Russell, who directed judgment on March 5, 1898, annulling the plaintiff's marriage with Halliday. The decree was not entered until December 1, 1898. No appeal was ever taken from this judgment.

It is contended by defendant that plaintiff married him within one week after the annulment of the Halliday marriage. But as has been

shown the judgment of annulment was rendered on March 5, 1898, and the plaintiff, shortly after its rendition, went abroad with her daughter, and, returning home late in 1898, met the defendant in this action on shipboard. An attachment sprang up, and the defendant urged matrimony. The plaintiff informed him as to the circumstances connected with her first marriage and divorce from Keaghey, her subsequent marriage with Halliday, and the judgment annulling that marriage. With full knowledge of all the facts defendant insisted upon her marriage to him. The plaintiff's son states in an affidavit, which is not disputed by defendant, that he saw the defendant a few days before the marriage, and the defendant spoke to him as follows:

"Clarence, I love your mother dearly. I intend to marry her and will never bring up anything against her. She has suffered enough. An honorable marriage is an honorable marriage anywhere. She has been before the courts and complied with the law. Notoriety and divorce mean divorce, and annulment means annulment. So she must be free."

Shortly thereafter, and on December 8, 1898, the marriage ceremony was performed. This marriage the defendant now repudiates and alleges that plaintiff was unable to marry in 1898 because her prior husband Keaghey was still and is now living, and no decree of divorce which would be recognized in this jurisdiction had been secured. Keaghey has married again and has a family in Texas, where he still resides. The defendant is admittedly in the receipt of an income of at least $8,000 per year. The plaintiff is without means, and her physician deposes that by reason of her advanced years and poor physical condition she is unable to secure employment. It is well settled that alimony will not be awarded, unless the court has reason to believe that the plaintiff may succeed in her action. If her cause is hopeless, alimony will be refused. To succeed here the plaintiff must establish the validity of the Texas divorce. And it is urged that the judgment in the Halliday Case renders that matter res adjudicata. But I am not willing to say on this motion that the questions which will be raised upon the trial of this action will not be decided under the law as it now stands. For it appears that the defendant has instituted a separate action in this state praying that his marriage to plaintiff may be annulled on the ground of the invalidity of the Texas divorce. There has been no adjudication of his status, even if it should be contended that plaintiff's status has been determined for all time by the Halliday judgment, and because she failed to appeal therefrom. If the plaintiff, under the law as it now is, should be able to establish that the Texas divorce is one which would now be recognized by the courts of this state, she may succeed in her action, even though in 1898 such a divorce could not have been so recognized. As has been shown above, the Texas divorce was held to be invalid by Justice Russell, for the reason that, though the defendant was duly personally served with process, such service was made in New Orleans and not in the state of Texas. It might seem at first sight from an examination of the authorities that plaintiff's case is well nigh hopeless, by reason of the frequent pronouncements of the courts of this state on this subject, and especially in view of the recent opinion of the Supreme Court of the United States in the elaborate discussion of all phases of the

question which is presented by Mr. Justice White in the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. Since the Halliday Case was decided in 1898, the Supreme Court of the United States has rendered its decision in Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794. And the doctrine of that case is affirmed specifically in Haddock v. Haddock, supra, wherein the following language is used:

"So, also, it is settled that, where the domicile of a husband is in a particular state, and that state is also the domicile of matrimony, the courts of such state having jurisdiction over the husband may, in virtue of the duty of the wife to be at the matrimonial domicile, disregard an unjustifiable absence therefrom and treat the wife as having her domicile in the state of the matrimonial domicile for the purpose of the dissolution of the marriage, and as a result have power to render a judgment dissolving the marriage which will be binding upon both parties, and will be entitled to recognition in all other states by virtue of the full faith and credit clause."

It is evident that the facts here are entirely analogous. The husband's domicile was Texas. The wife was sued for what her husband regarded as an unjustifiable absence, and the Texas decree was secured upon that ground, the wife having been personally served with process outside the state of Texas, and having refused to defend and justify her absence. It will be seen, therefore, that the Atherton Case, affirmed in this respect as it is by the Haddock Case, presents a strong expression of plaintiff's possible success in this action. The case presents another striking illustration of the present situation in the courts of this state with respect to matrimonial actions. Here the plaintiff was actually personally served with the summons and petition. She had every opportunity to appear and defend so far as notice is concerned. And acting upon the advice of counsel she knowingly failed to defend. A decree of divorce perfectly valid in the state of Texas was secured dissolving her marital relations, and she had the right, at least from the lay point of view, to believe that such a divorce was effective everywhere. Indeed, both plaintiff and defendant here unquestionably understood that they could lawfully marry, and doubtless in mutual good faith did so. Yet the Texas decree cannot be recognized here upon these facts alone (Jones v. Jones, 108 N. Y. 415, 15 N. E. 707, 2 Am. St. Rep. 447, and to escape the misfortune which would thus arise the plaintiff must bring herself within the protection of the peculiar circumstances cited in the Atherton Case and confirmed in the Haddock Case or she may not hope to enforce the recognition of this Texas divorce. As above indicated plaintiff may succeed, and that possibility is sufficient to allow the court to exercise its discretion and award her alimony and counsel fees.

The motion will be granted, and plaintiff will be allowed $250 per month alimony and $1,250 counsel fees; it being understood that the allowance for counsel fees is to be considered as provision for such fees in both actions. Settle order on notice.