(69 Misc. Rep. 191.)

### PEOPLE ex rel. CATLIN v. CATLIN.

(Supreme Court, Special Term, New York County. October, 1910.)

1. DIVORCE (§ 326*)—FOREIGN DIVORCE—VALIDITY.

A divorce recovered in a foreign state without personal service on defendant, or his personal appearance, is valid in New York only when recovered in the state of defendant's domicile or the matrimonial domicile of the parties.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 829; Dec. Dig. § 326.*]

2. HABEAS CORPUS (§ 99*)—CUSTODY OF CHILDREN—EVIDENCE.

Where a mother seeks to obtain custody of her infant children from their father, and a stipulation was made that the mother should have their custody, and that they should not be taken from the state, and that the father should always have access to them, and the mother left the children in the state and obtained a divorce in Nevada, which was not valid in New York, and on returning from Nevada her husband offered her a home, and she had no ground for legal separation, a writ of habeas corpus, sued out by her for the custody of her children, will be dismissed.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99.*]

Application by the People, on the relation of Marion B. Catlin, for a writ of habeas corpus against George L. Catlin. Writ dismissed.

Wilson Randolph Yard, for relator.
George William Hart, for respondent.

WHITNEY, J. This is a writ of habeas corpus to obtain the custody of two children, a girl of nine and a boy of four. The relator is their mother. The children had always, until 1909, lived with her as part of a family of which her father till his death and then her mother was the head. The family lived in New Jersey until 1906, when it removed to Brooklyn. The husband, this respondent, never lived with the family, except for a period of less than a year in 1905–1906, after the death of his father-in-law. He left in August of that year. Whether it was a case of willful and unjustifiable desertion on his part

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is in dispute. In 1909 the Brooklyn family consisted of relator, her children, her younger sister, two aunts, and her mother. The last named died in December of that year. After an unsuccessful attempt to persuade relator to live with him, an attempt whose good faith is in dispute, respondent seized the children. This led to litigation, which was settled by stipulation in October, 1909. By the stipulation relator was to have the custody of the children, their father always to have access to them, and it was agreed that they should not be taken out of the state. Three weeks after the agreement relator left them and went to Reno, in the state of Nevada, to get a divorce. They remained with the Brooklyn family until 1910, when respondent seized them again, and they have since remained in his custody. By the stipulation she was to retain them for a year; but he was advised and contends that she broke the stipulation by abandoning their custody, and that he thus became the proper custodian.

Her main contention is that by the decree of divorce which she obtained at Reno she is given the custody of the children, and that that decree, although not based upon personal service within the state of Nevada or upon appearance of this defendant, is one to which full faith and credit must be given. After a careful examination of the recent decisions of the Court of Appeals and United States Supreme Court concerning the law of domicile as bearing upon the validity of divorces granted without prior service of process within the jurisdiction of the court granting the divorce (Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650; Id., 181 U. S. 155, 21 Sup. Ct. 554, 45 L. Ed. 794; Bell v. Bell, 181 U. S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867), I agree with their interpretation by Mr. Justice Andrews in his able opinion in Callahan v. Callahan, 65 Misc. Rep. 172, 121 N. Y. Supp. 39, and hold that they are recognizable under the law of this state only when granted in the state of the domicile of the defendant or of the matrimonial domicile.

Relator relies largely on North v. North, 47 Misc. Rep. 180, 93 N. Y. Supp. 512, and 111 App. Div. 921, 96 N. Y. Supp. 1138, which attributed the same power to the state of the domicile of the plaintiff if the parties had separated by the fault of the defendant; but this is admittedly opposed to O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110, a case which I do not find to have been overruled, and it seems to me to open a way to abuse. Between the Atherton and Haddock decisions I see no conflict. In the former the Supreme Court expressly stated that it did not pass upon the validity of a divorce in "a state in which only one of the parties ever had a domicile," and sustained the jurisdiction of the Kentucky court on the sole ground that that state was the matrimonial domicile of the parties. The precise point decided was that the court in the state of matrimonial domicile has jurisdiction upon nonpersonal service of process to try the whole case, including the issues as to whether by the fault of the plaintiff the defendant had been given a right to acquire a separate domicile, and had done so. It seems to me that critics have been led into a misapprehension of the Atherton decision by assuming that the wife right-

fully left her husband, because the New York court so found. It must be assumed, on the contrary, that she wrongfully left him, because the Kentucky court, with full jurisdiction of the parties, had previously so adjudicated. It is a mistake to suppose that when a husband and wife separate it is always ascertainable as matter of absolute fact whose fault it is. Often, if not generally, that is not ascertainable as matter of absolute fact. They dispute about it, and different judges conflict in their decisions about it.

Domicile for practical purposes is not known as a fact, but fixed by some court as its inference from some testimony before it. It is, therefore, very important that as far as possible an adjudication should be had in a jurisdiction not selected by either party alone. If personal service of process within the jurisdiction of suit were required, either party could select a residence which would compel the issues to be tried in a forum unfavorable to the other. If it were dispensed with to the extent contended, either could go to a lax jurisdiction and summon the other by mail. No better rule could be found than that which the Supreme Court of the United States has adopted, namely, that the issues shall be triable without personal service within the state where the parties were last domiciled together as husband and wife. Hence, if the matrimonial domicile of these parties is the state of New York, I think that the Reno divorce is worthless, whether or not their separation was due to the fault of the defendant.

But relator contends that New Jersey recognizes a Reno divorce based upon service of process without the jurisdiction, that the matrimonial domicile is in New Jersey, and that the laws of New Jersey should, therefore, govern the courts of New York in their treatment of these parties. Mr. Justice Andrews, in the Callahan Case, defines matrimonial domicile as "the place where they last lived together as husband and wife with the intent of making that place their fixed home." Literally construed, this definition would make New Jersey the matrimonial domicile; but I think that the peculiar circumstances of the present case show the matrimonial domicile to be in this state. It is indeed true that the parties last lived together in the state of New Jersey, but in 1906 they both removed to New York. Since then they have amicably discussed the subject of setting up housekeeping together. He at one time took an apartment for the purpose in New York, and she went with him to see it. At about the same time she accompanied him to theaters and armories. They were each personally domiciled in New York state. They were here domiciled with intent to remain. They were here domiciled with intent to resume in full the relations of husband and wife. They were indeed residing in different counties, but the wife's residence in Brooklyn was not with intent to remain there. In my opinion New Jersey ceased to be the matrimonial domicile when both parties moved to New York, or, at latest, when they agreed to live in New York as man and wife, and did not again become the matrimonial domicile when the agreement failed, by whosesoever fault the failure occurred.

It is not clear from the papers whether the matrimonial domicile was originally in New Jersey or New York; but this is not important, for

the matrimonial domicile, like any other domicile, may change. Hence the Reno divorce, even if the relator obtained a domicile there, was void for want of jurisdiction; but I do not think that her residence amounted to a domicile. She testifies that in August, 1909, she was advised by her doctor to go West for her health to some higher climate; that he did not say Reno, but that she had made up her mind previously to go West and get a divorce, and told her husband so; that she arrived there November 12, 1909, and went to a residence recommended by her attorney. The Nevada statute requires six months' residence, and she commenced suit May 16, 1910, obtaining judgment by default July 25, 1910. She left Reno August 2, 1910, and has not returned. She left some wearing apparel at the hotel or boarding house where she was then sojourning, but reserved no room there. She has now no intent to return. She is residing with her sister and aunts in Brooklyn, and will stay there if her health permits. If not, she will go somewhere else, perhaps West. She has no definite plans.

Upon this state of facts, I find that she is still the wife of the respondent. Her husband asks her to return, and offers her a home. She shows no legal grounds for asking a separation, however justifiable her desire for it may be. It is not a legal ground for separation that she despises her husband, or does not believe that he would be true to her or support her. She therefore has no right to ask for the custody of the children while living apart from him. The little girl wishes to go back to Brooklyn to live; but both children seem to be well cared for, and to be friendly with both parents, and with all their relatives on both sides. It is quite possible that the little girl would be better off if given again into the custody of her maternal grandaunts; but this could not properly be forced by the court. Hence the writ must be dismissed.

Writ dismissed.