(71 Misc. Rep. 44.)

## POST v. POST.

(Supreme Court, Special Term, New York County. February, 1911.)

1. DOMICILE (§ 4*)—CONTINUANCE.
   An existing domicile continues until another is acquired elsewhere, and is not lost by temporary absence, or even by desertion or abandonment, until a new one is intentionally established.
   [Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*]

2. DIVORCE (§ 326*)—FOREIGN JUDGMENT—VALIDITY.
   Where a man and wife married in Louisiana, went to Texas to live, and acquired a matrimonial domicile there, which continued when the wife deserted the husband, and when he sued her and recovered an absolute divorce in Texas, such judgment was valid, and will be given full force and effect in New York.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–840; Dec. Dig. § 326.*]

3. DIVORCE (§ 172*)—JUDGMENT—CONCLUSIVENESS OF ADJUDICATION.
   The wife having afterwards married in New York, and later sued for a separation, a judgment for annulment of the marriage rendered on defendant's counterclaim on the ground that plaintiff's former husband was living, and that the Texas decree was invalid, remaining unreversed, dissolves the second marriage, but is not conclusive against the wife as to the validity of the second decree in a subsequent suit brought by her third husband to annul his marriage to her on the same ground.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 559–561; Dec. Dig. § 172.*]

4. DIVORCE (§ 124*)—RIGHT TO REMEDY.
   Marriage being a status, when entered into, should not be dissolved except on clear and convincing proof, and for the gravest and most satisfactory reasons.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 392–398; Dec. Dig. § 124.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Augustus T. Post against Emma C. Post. Complaint dismissed.

See, also, 55 Misc. Rep. 538, 105 N. Y. Supp. 910.

Charles W. Coleman, for plaintiff.

John J. Kirby, for defendant.

PLATZEK, J. The defendant has been three times married. Her first marriage was January 5, 1871, to John S. Keaghey, in New Orleans, La. In March, 1882, Keaghey commenced an action for divorce against his wife, on the ground of abandonment, in the district court of Jasper county, Tex. The notice of the commencement of the suit and a certified copy of the complaint were personally served on the defendant in that action in the city of New Orleans, La. She did not formally appear, authorize an appearance, or interpose an answer to the suit. When the case was reached for trial, she failed to appear and defend, and the court appointed a practicing attorney of the court, pursuant to the laws of Texas, to represent her. A decree of absolute divorce was granted to the husband by the court March 9, 1882. On August 4, 1895, the defendant married Daniel Holliday in the city of New York. In April, 1897, she instituted suit against Holliday in this court for a separation. By way of defense, he pleaded that she had a husband living at the time of her marriage to him. He also asserted that the Texas divorce from Keaghey was void because the defendant in the Texas action had not been personally served with process within 'the state of Texas. This action was tried before Mr. Justice Russell (deceased), who directed judgment on March 5, 1898, annulling the marriage between Holliday and the defendant. The decree was not entered until December 1, 1898. The plaintiff and the defendant herein were duly married in this state seven days thereafter. This action is brought to procure a judgment declaring the marriage between Augustus T. Post and Emma C. Post, the parties hereto, null and void on the ground that when the marriage was solemnized between the Posts "the defendant (wife) was still married. The general rule is that the law of the matrimonial domicile of the parties governs in actions for divorce. The same rule by analogy applies to an action for the annulment of a marriage." Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132; Earle v. Earle, 141 App. Div. 611, 126 N. Y. Supp. 317. The answer of the defendant admits the prior marriage to Keaghey and to Holliday, and that both of them were living on December 8, 1898, when she married Post. As to the first marriage, a judicial decree of a competent court in the state of Texas divorcing the defendant from Keaghey is alleged. The marriage to Holliday is averred to have been annulled by a judgment of the Supreme Court of the state of New York entered December 1, 1898. If the court in Texas which granted the decree of divorce to Keaghey had no jurisdiction of the subject-matter and of the parties to the action, then the judgment rendered is void, and not entitled to recognition or enforcement in the courts of this state. Where it appears that the courts of a sister state had such jurisdiction, then the courts of this state will give full faith and

credit to its judgment and decree. The important question in this case is whether on February 15, 1882, when the defendant was served with the papers in the Texas divorce suit in New Orleans, she was domiciled in the state of Louisiana or whether her matrimonial domicile was then in the state of Texas. It is not disputed that the Keagheys after marriage resided in New Orleans until November, 1875; that they then removed to Galveston, Tex., where they continued to live together as husband and wife until May, 1878; and that Mrs. Keaghey at that time went to New Orleans and secured employment in the United States mint. Three children were born to the couple, two daughters and a son. Before leaving Galveston, Mrs. Keaghey placed the girls in the Ursuline Convent in Galveston, and took her son, of tender years, with her. She returned to Galveston frequently to see her children. Then came a time when the two daughters were transferred to New Orleans, and the boy went to live with the father and grandfather in Texas. Mrs. Keaghey testified that while employed in the mint in New Orleans and at all times after May, 1878, and until the divorce was granted to her husband she regarded Galveston, Tex., as her only domicile. Her testimony as to the matrimonial domicile is corroborated by her former husband Keaghey and two other witnesses. Mr. Keaghey has been since November, 1875, domiciled in Texas and still resides in that state.

[1] An existing domicile continues until another is acquired elsewhere, and is not lost by temporary absence, or even by desertion or abandonment, until a new one is intentionally established. De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996, 17 Am. St. Rep. 652; Harris v. Harris, 83 App. Div. 123, 82 N. Y. Supp. 568; Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950; Dupuy v. Wurtz, 53 N. Y. 556. In Callahan v. Callahan, 65 Misc. Rep. 172, 121 N. Y. Supp. 39, Andrews, J., says:

"In determining the validity of a foreign decree of divorce obtained without personal service or appearance, three elements are to be considered: (1) The domicile of the plaintiff. (2) The domicile of the defendant. (3) The matrimonial domicile. * * * If the plaintiff and defendant are both domiciled there, the decree is valid, even if the defendant may be actually present here. And the presumption is that the domicile of the husband is that of the wife. * * * If the plaintiff is domiciled there and the matrimonial domicile is there also, the decree is valid, even though the defendant is domiciled here. This matrimonial domicile may be distinct from the present domicile of both husband and wife. Presumptively it is identical with the domicile of the husband. But, where the wife has acquired a separate domicile, it is the place where they last lived together as husband and wife with the intent of making that place their fixed home."

In Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, it is held:

"There is no doubt of the proposition that a decree of divorce may be lawfully obtained at the matrimonial domicile, notwithstanding that the defendant may have taken up his or her residence separate from the other party in another state, providing that the law of the domicile with respect to the personal service or publication be scrupulously observed. * * * This case does not involve the validity of a divorce granted on constructive service by the court of a state in which only one of the parties ever had a domicile, nor the question to what extent the good faith of the domicile may

be afterwards inquired into. In this case the divorce in Kentucky was by the court of the state which had always been the undoubted domicile of the husband and which was the only matrimonial domicile of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky."

That Galveston, Tex., was the matrimonial domicile of the Keagheys, husband and wife, when the wife deserted her spouse, when the action for divorce in Texas was begun and when the decree in the suit was entered, is conclusively established.

[2] The Keaghey action was brought in pursuance of the statutes of the state of Texas, and the laws of that state applicable to a suit for divorce were strictly complied with in the prosecution of the action. The court had jurisdiction of the subject-matter of the action and of the parties.

[3] The decree of annulment of the marriage of the defendant to Holliday, based upon the alleged invalidity of the Texas divorce, is urged by the plaintiff as res adjudicata as to the status of the defendant as the wife of Keaghey. The Holliday decree of annulment has not been reversed. This decree adjudged:

"That the marriage between the plaintiff and the defendant be, and the same is, hereby null from the date of this judgment. * * * That the parties plaintiff and defendant are free from the obligation of marriage with each other."

The decree was entered December 1, 1898. The Posts were married December 8, 1898. The gist and main point in the Holliday suit was whether the parties thereto were to be freed from each other. By the terms of the decree they were freed from their marital relations and obligations. The mere recital of a reason for the adjudication in the decree is not absolutely conclusive. A judgment, until reversed or corrected, may be relied upon by any party to the action in which it was rendered. It is argued that a suit for divorce is an action in rem. "Such a judgment is not conclusive against the whole world of the facts which the decree recites, or on which it necessarily proceeds, except as the particular subject-matter then before the court." Townsend v. Van Buskirk, 22 App. Div. 444, 48 N. Y. Supp. 260. The Keaghey divorce is valid. The plaintiff in this action was a stranger to the Holliday suit, and was in no way affected by it. The status of the defendant only was in question in the Holliday action. The status of the plaintiff, Augustus T. Post, was not before the court. Ruger v. Heckel, 21 Hun, 489, affirmed, 85 N. Y. 483; Hall v. Hall, 139 App. Div. 120, 123 N. Y. Supp. 1056. The late Mr. Justice Dayton on granting an application for alimony in an action for separation by this defendant against this plaintiff considered the status of Mrs. Post. In a learned opinion he held:

"It is well settled that alimony will not be awarded unless the court has reason to believe that the plaintiff may succeed in her action. If her cause is helpless, alimony will be refused. To succeed here, the plaintiff must establish the validity of the Texas divorce, and it is urged that the judgment in the Holliday case renders that matter res adjudicata. But I am not willing to say on this motion that the questions which will be raised upon the trial of this action will not be decided under the law as it now stands; for

it appears that the defendant has instituted a separate action in this state, praying that his marriage to plaintiff may be annulled on the ground of the invalidity of the Texas divorce. There has been no adjudication of his status even if it should be contended that plaintiff's status has been determined for all time by the Holliday judgment, and because she failed to appeal therefrom. If the plaintiff, under the law as it now is, should be able to establish that the Texas divorce is one which would now be recognized by the courts of this state, she may succeed in her action, even though in 1898 such a divorce could not have been so recognized. As has been shown above, the Texas divorce was held to be invalid by Justice Russell, for the reason that, though the defendant was duly personally served with process, such service was made in New Orleans, and not in the state of Texas. It might seem at first sight from an examination of the authorities that plaintiff's case is well nigh hopeless, by reason of the frequent pronouncements of the courts of this state on this subject, and especially in view of the recent opinion of the Supreme Court of the United States in the elaborate discussion of all phases of the question which is presented by Mr. Justice White in the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. Since the Holliday case was decided in 1898, the Supreme Court of the United States has rendered its decision in Atherton v. Atherton, 181 U. S. 155 [21 Sup. Ct. 544, 45 L. Ed. 794]. And a doctrine of that case is affirmed specifically in Haddock v. Haddock, supra, wherein the following language is used: 'So, also, it is settled that where the domicile of a husband is in a particular state, and that state is also the domicile of matrimony, the courts of such state having jurisdiction over the husband may, in virtue of the duty of the wife to be at the matrimonial domicile, disregard an unjustifiable absence therefrom, and treat the wife as having her domicile in the state of the matrimonial domicile for the purpose of the dissolution of the marriage, and as a result have power to render a judgment dissolving the marriage which will be binding upon both parties, and will be entitled to recognition in all other states by virtue of the full faith and credit clause.' It is evident that the facts here are entirely analogous. The husband's domicile was Texas. The wife was sued for what her husband regarded as an unjustifiable absence, and the Texas decree was secured upon that ground, the wife having been personally served with process outside the state of Texas, and having refused to defend and justify her absence. It will be seen, therefore, that the Atherton Case, affirmed in this respect as it is by the Haddock Case, presents a strong expression of plaintiff's possible success in this action."

He also held that:

"The plaintiff must bring herself within the protection of the peculiar circumstances cited in the Atherton Case and confirmed in the Haddock Case or she may not hope to enforce the recognition of this Texas divorce." Post v. Post, 55 Misc. Rep. 538, 105 N. Y. Supp. 910.

The uncontradicted evidence in the case at bar brings the defendant within the protection of the rule of law declared in the cases cited by Mr. Justice Dayton. To same effect, see Hammond v. Hammond, 103 App. Div. 437, 93 N. Y. Supp. 1; North v. North, 47 Misc. Rep. 180, 93 N. Y. Supp. 512, affirmed, 111 App. Div. 921, 96 N. Y. Supp. 1138; Hall v. Hall, 139 App. Div. 120, 123 N. Y. Supp. 1056; Catlin v. Catlin, 69 Misc. Rep. 191, 126 N. Y. Supp. 350; Benham v. Benham, 69 Misc. Rep. 442, 125 N. Y. Supp. 923; Cheely v. Clayton, 110 U. S. 701, 4 Sup. Ct. 328, 28 L. Ed. 298. Judge Gray, writing for the court in the Di Lorenzo Case, 174 N. Y. at page 472, 67 N. E. at page 64, 63 L. R. A. 92, 95 Am. St. Rep. 609, says:

"While the marriage relation, in its legal aspect, has no peculiar sanctity, as a social institution, a due regard for its consequences and for the orderly

constitution of society has caused it to be regulated by laws, in its conduct as in its dissolution."

[4] Marriage, being a status when entered into, should only be dissolved upon clear and convincing proof and for the gravest and most satisfactory reasons. The plaintiff has not sustained his cause of action. Judgment is directed in favor of the defendant dismissing the complaint, with costs. Findings marked. Submit engrossed findings and form of decree on notice.

Complaint dismissed, with costs.