Rufus P. Hubbard, Appellant, *v.* Eliza A. Hubbard,
Respondent.

Matrimonial actions — public policy — foreign divorce —
effect to be given to such divorce by courts of this state —
discretion of courts therein — action for annulment of marriage
on ground that defendant was divorced from first husband in
foreign state for cause not recognized in this state — when
such action may not be maintained.

1. Apart from constitutional obligations the law of no state can
have effect as law beyond the territory of the state imposing it, unless
by permission of the state where it is allowed to operate. Whether
or not the operation of a foreign decree of divorce in a given case will
contravene the policy or do wrong or injury to citizens of the state is
exclusively for its courts to determine. They are the final judges of
the occasions on which the exercise of comity will or will not make
for justice or morality. The exercise rests in sound judicial discretion
guided and controlled by the policy of the state, relevant judicial
decisions and the circumstances of the case.

2. Plaintiff alleges that a decree divorcing defendant from a former
husband was invalid and asks an annulment of his subsequent marriage
to defendant. Defendant at the time of her divorce was a resident
of Massachusetts, having brought an action against her then husband
who was a resident of this state and was not served with process in
Massachusetts. The court of that state ordered constructive service
of process upon him. He did not appear in the action and a divorce
was granted on his default. The claim of the plaintiff is that the
decree divorcing the first husband is void as to the courts of the state
of New York in virtue of the adjudged policy of this state to refuse to
recognize as binding a decree of divorce obtained in a court of a sister
state, not the matrimonial domicile, upon grounds insufficient for that
purpose in this state, when the divorced defendant resided in this state
and was not personally served with process and did not appear in the
action. *Held*, that while the decree divorcing the defendant from her
former husband may adjudge her marital status within the state of
Massachusetts as to the husband and the world at large, the courts
of the state of New York, untrammeled by the full faith and credit
clause of the Federal Constitution (Art. 4, § 1), may give the decree,
within the confines of their jurisdiction, the efficacy and effect they
deem rightful and salutary in view of the public policy of the state;

that under the facts of the case judicial discretion may rightfully and wisely be exercised in permitting to it the full operation to which it was entitled in the state of Massachusetts.

*Hubbard* v. *Hubbard*, 186 App. Div. 883, affirmed.

(Argued January 14, 1920; decided February 24, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 19, 1919, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin D. Webb* and *Frederick N. Van Zandt* for appellent. The public policy of this state, as declared by this court, denies the validity here of foreign decrees of divorce obtained under the circumstances here disclosed. (*Matter of Kimball*, 155 N. Y. 62; *Haddock Case*, 201 U. S. 562; *Olmsted* v. *Olmsted*, 190 N. Y. 458; *O'Dea* v. *O'Dea*, 101 N. Y. 23; *Kaufman* v. *Kaufman*, 177 App. Div. 162; *Gilson* v. *Airy*, 181 App. Div. 761; *Matter of Caltabellota*, 183 App. Div. 753.)

*Richard E. Weldon* for respondent. Under the full faith and credit clause of the Federal Constitution, a state is not compelled to recognize a divorce granted in another state without obtaining jurisdiction of the person of the defendant, but in accordance with its own public policy may recognize such divorce. (*Haddock* v. *Haddock*, 201 U. S. 562.) The courts of this state regard as binding decrees of divorce granted in other states on publication of the summons, except as it affects *bona fide* citizens of this state at the time the decree of divorce is granted in the sister state. For the exclusive protection of such citizens our courts raise the rule of public policy that they will not recognize a decree of divorce granted

in a sister state on publication of the summons. (*Percival* v. *Percival*, 106 App. Div. 111; 186 N. Y. 587; *Kaufman* v. *Kaufman*, 177 App. Div. 162; *Olmsted* v. *Olmsted*, 190 N. Y. 458; *Matter of Kimball*, 155 N. Y. 62; *O'Dea* v. *O'Dea*, 101 N. Y. 23.)

COLLIN, J. The action is to obtain the judgment annulling the marriage of the plaintiff and defendant. The judgment of the Special Term dismissing the complaint was unanimously affirmed by the Appellate Division.

The cardinal.facts as found by the decision of the Special Term are: July 8, 1896, the parties intermarried at Bismarck, North Dakota. The plaintiff, the husband, seeks to annul this marriage upon the ground that the defendant was not then legally and validly divorced from her former husband who was then living. Each of the plaintiff and defendant was at the time of the marriage, and for several years last theretofore had been, a resident of and domiciled in the state of Massachusetts. In 1874 the defendant and John A. Murphy, then residents of the state of Pennsylvania, intermarried at the city of Philadelphia in that state. In Pennsylvania they separated. In 1876 the defendant became a resident of the state of Massachusetts. John A. Murphy became a resident of the state of New York prior to August, 1892, and was such resident until his death in July, 1912. August 11, 1892, the defendant began in a court of competent jurisdiction of the state of Massachusetts a proceeding to obtain a decree divorcing from the bonds of marriage John A. Murphy and herself, upon the ground of desertion. Murphy was not served in that proceeding with any process within the state of Massachusetts, did not appear in the proceeding and made default therein. The court duly ordered, and pursuant there was, constructive service of process upon him. November 4, 1893, the court rendered a decree absolutely divorcing

the defendant from John A. Murphy. It is this divorce which the plaintiff here alleges was invalid. In 1900 the plaintiff became and in 1902, prior to the commencement of this action, the defendant became, and each since becoming has been, a resident of the state of New York.

The claim of the appellant, supported by earnest argument, is that the decree divorcing the defendant from John A. Murphy is void as to the courts of the state of New York in virtue of the adjudged policy of this state to refuse to recognize as binding a decree of divorce obtained in a court of a sister state, not the matrimonial domicile, upon grounds insufficient for that purpose in this state, when the divorced defendant resided in this state and was not personally served with process and did not appear in the action. (*Olmsted* v. *Olmsted,* 190 N. Y. 458, 466; affirmed, 216 U. S. 386; *Winston* v. *Winston,* 165 N. Y. 553.) It has been conclusively established that such policy is not hostile to the full faith and credit clause of the Federal Constitution. (Art. 4, § 1; *Haddock* v. *Haddock,* 201 U. S. 562.) Had there been at any time a matrimonial domicile in the state of Massachusetts on the part of the defendant and her husband, John A. Murphy, the constitutional provision would probably have been applicable and controlling, because the *res* — the marriage *status* — would have been within the realm of the judicial power of that state. (*Atherton* v. *Atherton,* 181 U. S. 155; *Thompson* v. *Thompson,* 89 N. J. Eq. 70.) While the decree divorcing the defendant from her former husband may adjudge her marital *status* within the state of Massachusetts as to the husband and the world at large, the courts of the state of New York, untrammeled by the constitutional clause, may give it within the confines of their jurisdiction the efficacy and effect they deem rightful and salutary in view of the public policy of the state. Generally speaking, each state when unrestrained by the

1920.] Opinion, per COLLIN, J. [228 N. Y.]

Federal Constitution has the right to adjudge and declare the marital *status* of those residing and domiciled within it. (*Hunt* v. *Hunt,* 72 N. Y. 217.)

The reason for the stated policy of this state is its statutory adoption of the rule that there may be of right but one sufficient cause, to wit, adultery, for absolute divorce. (*People* v. *Baker,* 76 N. Y. 78, 88.) The principle of comity between the states of the United States does not require of a state the operation of a divorce decree of a sister state which violates the principles of morality, or the public policy, or municipal regulations established by it. Apart from constitutional obligations the law of no state can have effect as law beyond the territory of the state imposing it, unless by permission of the state where it is allowed to operate. The policy of this state is not embodied in any legislative enactment or is not a rule of universal law. It exists to promote the permanency of the marriage contracts and the morality of the citizens of the state. Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy or wrong or injure citizens of the state is exclusively for its courts to determine. They are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality. The exercise rests in sound judicial discretion guided and controlled by the policy of the state, relevant judicial decisions and the circumstances of the case. (*Edgerly* v. *Bush,* 81 N. Y. 199; *Marshall* v. *Sherman,* 148 N. Y. 9; *Matter of Waite,* 99 N. Y. 433; *International Harvester Company* v. *McAdam,* 142 Wis. 114.) It is also true that the public policy of the state is to be determined by its positive laws, or in cases concerning matters upon which they are silent by the decisions of its courts.

Under the statutes the plaintiff had a cause of action to annul the marriage between the parties in case John A. Murphy was when they intermarried the husband of the

defendant. (Code of Civil Procedure, sections 1743, 1745; Domestic Relations Law [Cons. Laws, ch. 14], § 6.) Whether or not Murphy was then the defendant's husband depends upon the operation or non-operation of the decree of the court of Massachusetts absolutely divorcing them. Under the facts of the case judicial discretion may rightfully and wisely be exercised in permitting to it the full operation to which it was entitled in the state of Massachusetts. Those facts are peculiar and unlike those presented in any case judicially decided known to us. The state of New York was not a party to any of the marital transactions of the parties involved in this action. The matrimonial domicile of the defendant and her former husband, Murphy, was the state of Pennsylvania, in which state they resided until they separated as husband and wife. As husband and wife they did not at any time reside in or become citizens of the state of New York Into this state Murphy came as an abandoned or abandoning husband and acquired the residence existing at the rendition of the Massachusetts decree, but which ceased to exist, by reason of his death, years prior to the trial of this action. During the residence he did not assert the rights or seek to enter into the obligations of the marriage between the defendant and himself. At the trial of this action the marriage between him and the defendant was by his death absolutely and forever dissolved. It was beyond the power of this state to consider or hold it then binding as to the defendant or any person, or for any purpose. The matrimonial domicile of the defendant and the plaintiff was the state of Massachusetts, where they resided and were domiciled and remained until they respectively became, as we have stated, residents of the state of New York. Prior thereto neither had been a citizen of this state. As to each of them the decree of divorce was valid. Their marriage was under the laws of that state rightful and valid and created for them the *status* of husband and wife. That

*status* they had when they for the first time became residents of this state. That *status* must, undoubtedly, yield in case it was created through means hostile to the law of this state. " The rule that the status of the domicile is the status everywhere must yield when the status is constructed on principles which are contrary to those which are generally recognized, or which can be admitted by the law of the forum resorted to." (*Adams v. Adams,* 154 Mass. 290.) We are at liberty to inquire into the validity of the divorce through which the capacity of the defendant to marry the plaintiff arose. Its alleged invalidity rests ultimately solely upon the public policy of this state. That policy does not require the establishment of this state as a forum or refuge to which parties to a marriage validly consummated in a sister state in which they were domiciled may, they having become residents of this state, resort to have the marriage adjudged a nullity and adulterous, upon the ground that a former spouse of and divorced by one of them in a sister state, who at the time of the divorce had left the domicile of the marriage and become a resident of this state, was not personally served in the divorce action with process or appeared therein. The plaintiff, assuredly, is not entitled to protection against the marriage at the hands of our courts. A finding of the trial court was that he instigated the procurement of the divorce. The moral or legal principles adopted by the state will not be weakened or deteriorated by refusal to declare unlawful and void the marriage between the parties. This conclusion makes unnecessary a discussion of the other claims of the plaintiff.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, ANDREWS and ELKUS, JJ., concur.

Judgment affirmed.