MARGARET B. POWELL, Appellant, *v.* WILLIAM G. POWELL, Respondent.

First Department, February 6, 1925.

Husband and wife — divorce — parties were married in New York but immediately established residence in New Jersey — defendant obtained divorce in Nevada which would not be recognized in this State, and remarried in California — plaintiff at time of Nevada divorce and at time of defendant's remarriage was resident of New Jersey — plaintiff was resident of this State when this action was commenced — action cannot be maintained — fact of marriage in this State does not aid plaintiff.

A wife cannot maintain an action for divorce in this State on the ground of adultery based on the fact that her husband obtained a decree of divorce in Nevada, which decree would not be recognized in this State, and subsequently remarried in California prior to the commencement of this action, where it appears that while the original marriage was entered into in this State the parties immediately established their residence in New Jersey, and the plaintiff was not a resident of this State at the time of the Nevada divorce nor at the time the defendant remarried, although she had been a resident of this State for about one year prior to the commencement of the action.

*It seems,* that before our courts will invoke the matrimonial policy of refusing to recognize divorce decrees obtained in other States for causes not sufficient in this State, upon other than personal service of process, where no matrimonial domicile exists in such State, two conditions must be present: *First,* the person in whose behalf the doctrine is invoked must be and have been a citizen of this

State at the time of the entry of the foreign decree of divorce or at the time the other party entered into the second marriage, and, *second*, if reliance is upon residence in New York State at the time of the second marriage, it must appear that the policy of the State where the defendant resided at the time of the foreign decree of divorce is similar to that of New York.

The fact that the parties to this action were married in the State of New York does not aid the plaintiff since immediately following the marriage ceremony they established their residence and matrimonial domicile in the State of New Jersey.

MARTIN, J., dissents.

APPEAL by the plaintiff, Margaret B. Powell, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 6th day of March, 1923, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint in an action for divorce.

*Ashley & Foulds* [*Andrew Foulds, Jr.*, of counsel], for the appellant.

*William Ferguson*, for the respondent.

FINCH, J.:

The facts in the case at bar are as follows: The parties were married in this State in January, 1914. Immediately thereafter they established their matrimonial domicile in the State of New Jersey and thereafter lived in the States of Pennsylvania and New Jersey and for about three weeks in the city of Rochester, N. Y. In the fall of 1916 the plaintiff and the defendant moved to Stroudsburg, Penn., and established a matrimonial domicile in said State. In the summer of 1917 the defendant entered the United States Army and was overseas until the spring of 1919. After being mustered out of the Army in 1919, and sometime in July, 1919, the defendant became a resident of and acquired a domicile in the State of Nevada. In the early part of 1918 the plaintiff moved from the State of Pennsylvania to the State of New Jersey. In February, 1920, the defendant commenced an action against the plaintiff in the State of Nevada on the ground of extreme cruelty and by an order in said action it was directed that the summons and complaint be served on the defendant, the plaintiff herein, by publication, which order was obtained upon an affidavit made by the defendant herein that the plaintiff herein was not a resident of the State of Nevada but resided at that time in the city of Passaic, State of New Jersey. Said summons and complaint were served personally on the plaintiff herein by the defendant herein in the city of Passaic on or about the 2d day of March, 1920. The defendant therein, being the plaintiff herein, did not appear or answer, and on her default, and on or about the

17th day of April, 1920, a decree was entered in said action that the marriage between the plaintiff and the defendant forever be dissolved on the ground of extreme cruelty. Thereafter and on the 6th day of May, 1920, the defendant married in the State of California a woman other than the plaintiff herein. In September, 1920, the defendant and the aforesaid woman moved to Dansville, N. Y., where they now reside as man and wife. In July, 1921, the plaintiff moved her residence and became domiciled in the city of New York where she now resides, and instituted this action for divorce upon the ground of adultery in that the defendant is alleged to be unlawfully cohabiting with his present wife. The court has found that this plaintiff was a resident of either the State of New Jersey or the State of Pennsylvania at the time of the granting of the Nevada decree and dismissed the complaint herein upon the sole ground that while the court would refuse to recognize a decree of divorce obtained in the manner of the Nevada decree herein as binding upon those who were citizens of this State at the time of the rendering of the decree, being contrary to our public policy, yet the State of New York would only enforce such rule of public policy for the protection of those who were citizens of this State at the time of the granting of the decree in Nevada and not for the protection of citizens of sister States.

From the above statement of facts it appears that more than a year after the granting of the Nevada decree to the defendant and his subsequent marriage in California, the plaintiff became a citizen of the State of New York. The question in brief, therefore, is whether New York will extend by comity its doctrine of non-recognition of such a decree to those who are not its citizens either at the time of the rendering of such decree, or at the time of a subsequent marriage. Our courts have reiterated again and again that this doctrine may be invoked only by those domiciled in the State of New York at the time of the rendering of the foreign decree or at the time of the contracting of the subsequent marriage.

*Percival* v. *Percival* (106 App. Div. 111, wherein the Appellate Division, Second Department, affirmed upon the opinion of Mr. Justice KELLY at Trial Term; affd. by the Court of Appeals, without opinion, 186 N. Y. 587) was a case almost parallel to the case at bar. There the plaintiff and his wife maintained a matrimonial domicile in New York State for twenty years and therein Julia Percival obtained a decree of separation from her husband which adjudged that the parties were domiciled in the State of New York. Later Julia Percival obtained in New Jersey a decree of divorce by constructive service of process upon her husband. Julia Percival thereafter again married and Edward Percival began an action

against her for divorce in the courts of this State. It appearing
that Edward Percival was of a roving disposition and absent from
the State of New York for long periods the court held that in order
that the plaintiff, Edward Percival, might claim the benefits of
the policy of the State of New York relative to foreign judgments
of divorce, it was necessary for him to show affirmatively that at
the time the New Jersey decree of divorce was rendered he was
a *bona fide* resident of the State of New York. The language of
the opinion in that regard is as follows: "And, as the courts have
said, the policy of this State is enforced for the protection of its
own citizens domiciled here, whose status should not be changed
by foreign decree.   *   *   *   But it seems to me that when this
principle of State policy is invoked, the party invoking it must
bring himself within its protection. I think when he attacks a
foreign decree entered against him without personal service on the
ground that the foreign court was without jurisdiction, *he must
show that he was a resident of the State of New York at the time the
foreign decree was obtained.*" (Italics not in original.)

In *Kaufman* v. *Kaufman* (177 App. Div. 162) Mr. Justice
LAUGHLIN, for a unanimous court, wrote as follows: " It has been
recognized, however, in many decisions that this rule of public policy
is enforcible *only* for the protection of the citizens of this State (See
*Starbuck* v. *Starbuck*, 173 N. Y. 503, 508, and cases cited) [' only '
italicized in original]; and in *Percival* v. *Percival* (106 App. Div.
111; affd., 186 N. Y. 587) it was held, in an action by a former
husband of the defendant therein for a divorce, involving the
validity of a divorce obtained by her in New Jersey on constructive
service of process, that it was incumbent on the plaintiff in order
to obtain the benefit of this rule of public policy to show that he
was a resident of this State at the time the foreign action was
commenced and the foreign decree granted."

In *Schenker* v. *Schenker* (181 App. Div. 621; affd., 228 N. Y. 600)
Mr. Justice PAGE, for this court, quoted with approval the sentence
of Mr. Justice LAUGHLIN holding that the New York courts would
enforce this rule of public policy only for the protection of its own
citizens and said: " But it has been recognized that ' this rule of
public policy is enforcible only for the protection of the citizens
of this State.' (*Kaufman* v. *Kaufman,* 177 App. Div. 162, 164.)
It, therefore, might be sufficient in this case to hold that as, at the
time the action for divorce was pending in the Alabama court,
neither of the parties thereto was a citizen of this State, and neither
the plaintiff nor defendant herein was a citizen of this State when
the marriage was solemnized in South Carolina, this rule of public

48

policy did not apply and that the marriage, being lawful in South
Carolina, was valid and could not be questioned in this State."

The Court of Appeals affirmed on the authority of *Hubbard* v.
*Hubbard* (228 N. Y. 81). While said case of *Hubbard* v. *Hubbard*
was a case where the plaintiff, because he instigated the procurement
of the divorce by the defendant, did not come into court with clean
hands, there still is the case of *Percival* v. *Percival* (*supra*), to which
attention has already been called.

In *Kaiser* v. *Kaiser* (192 App. Div. 400; affd., 233 N. Y. 524)
the Appellate Division, First Department, again said: " We have
also held that where neither of the parties to the action was a citizen
of this State at the time the action was brought in the foreign
State, such a judgment would be recognized as binding because
this rule of public policy is enforcible only for the protection of
the citizens of this State. ( *Kaufman* v. *Kaufman*, 177 App. Div.
162; *Schenker* v. *Schenker*, 181 id. 621; affd., 228 N. Y. 600; *Ball* v.
*Cross*, 190 App. Div. 711; *Hubbard* v. *Hubbard*, 228 N. Y. 81.)
The learned counsel for the appellant construes these decisions as
showing the intent of the courts to depart from the policy of the
earlier cases. These later cases were not in hostility to, but in
harmony with, the earlier cases and did not show any intention of
changing the policy of this State."

There is one opinion to the contrary. The Appellate Division
in the Fourth Department in *Matter of Caltabellotta* (183 App. Div.
753), with Lambert, J., not sitting, held that a non-resident of the
State of New York might, in a probate proceeding, be made a party
upon the ground that she was the lawful widow of the decedent
instead of the person whom he had married after he had procured
the decree upon constructive service. It may be that this case
can be rested on a mere matter of procedure on the ground that
the applicant was at least a proper party, if not a necessary party
but the court did not rest its position on any such ground, but
squarely held that our courts would not turn a deaf ear to a citizen
of a sister State applying to them for the benefits of such a policy.
The court cited no authorities for its position. It said: " It is
said, however, that New York has only enforced this policy in
favor of its own citizens and that our courts would turn a deaf
ear to a citizen of a sister State applying to them for the benefit
of such policy. I am not willing to concede that the courts of
New York have committed themselves to a position so selfish, so
far losing sight of the principle involved. In this connection
we must bear in mind that the State of Pennsylvania has refused
to give validity to such judgments by comity. (*Colvin* v. *Reed*,
55 Penn. St. 375; *Reel* v. *Elder*, 62 id. 308.) The appellant is a

resident of the State of Pennsylvania. Our attention has been directed to *Kaufman* v. *Kaufman* (177 App. Div. 162) and *Percival* v. *Percival* (106 id. 111; affd., without opinion, in 186 N. Y. 587) as deciding the question involved in hostility to the views here expressed, but, although we think that correct conclusions were reached in those cases, we do not think the decisions are necessarily in conflict with our views."

We now come to the case of *Ball* v. *Cross* (231 N. Y. 329). In that case the plaintiff married the defendant in Washington, D. C., and a few days thereafter the parties separated and the plaintiff brought this action claiming that the defendant was not free to marry because she already had a husband living. It appeared that the defendant and one Lescher were married in Missouri and lived and cohabited in that State and later moved to Texas, so that the trial court found that the defendant was domiciled in either the State of Missouri or the State of Texas at the time her husband, Lescher, obtained his decree of divorce in Nevada. The court calls attention to the fact that the plaintiff in said action was and always had been domiciled in the State of New York. The court sent the case back for a new trial holding that they would regard the divorce which Lescher obtained in Nevada valid or not accordingly as the State of Missouri or Texas, where the defendant was shown to have been residing at the time of the decree, had a policy similar to that of New York.

It is interesting to note that in that case the court inquired into the validity of a foreign divorce between two parties neither of whom at any time was domiciled in this State, at the instance of a citizen of this State who married one of the parties to the foreign divorce. The court was careful to point out that this was done only to afford protection to one of our citizens and also to reiterate the doctrine that the aforesaid matrimonial policy of this State is not to be extended to persons not domiciled herein at the time of the entry of the decree of divorce or the second marriage, stating (p. 331): " Had the defendant then been domiciled in and, therefore, a citizen of New York, as no matrimonial domicile was ever acquired in Nevada, the decree would be ignored by us. * * * Public policy will not permit us to give effect, as against our own citizens, of a judgment affecting their marital status, so obtained on grounds thought by us to be insufficient. On the other hand were the contest between Lescher and the defendant, neither ever having been domiciled here, we would not interfere. Nor would we had the second husband at the time of the second marriage not been one of our citizens, and had the marriage been valid where contracted. * * * In the case before us, however, if

the second marriage was invalid, the plaintiff, domiciled here, is entitled to relief."

In other words, before our courts will invoke the matrimonial policy of refusing to recognize decrees obtained in other States for causes not sufficient in this State, upon other than personal service of process, where no matrimonial domicile exists in such State, two conditions must be present: *First,* the person in whose behalf the doctrine is invoked must be and have been a citizen of this State at the time of the entry of the decree of divorce or at the time of entering into the second marriage, and, *second,* if reliance is upon residence in New York State at the time of the second marriage, that the policy of the State where the defendant resided at the time of the decree of divorce, is similar to that of New York. Any other holding would tend to make the courts of New York a mecca to which matrimonial litigants would throng. To avoid such an intolerable situation is sufficient reason to refuse in the case at bar to extend the doctrine based on the principle of comity. While the facts in the case of *Hubbard* v. *Hubbard* (*supra*) are distinguishable, the principle involved is clearly applicable. As was said by COLLIN, J. (at p. 87): " We are at liberty to inquire into the validity of the divorce through which the capacity of the defendant to marry the plaintiff arose. Its alleged invalidity rests ultimately solely upon the public policy of this State. That policy does not require the establishment of this State as a forum or refuge to which parties to a marriage validly consummated in a sister State in which they were domiciled may, they having become residents of this State, resort to have the marriage adjudged a nullity and adulterous, upon the ground that a former spouse of and divorced by one of them in a sister State, who at the time of the divorce had left the domicile of the marriage and become a resident of this State, was not personally served in the divorce action with process or appeared therein."

It is urged that the fact that the parties were married in this State has a material bearing in the disposition of the case. In this connection it is to be noted that there is no finding by the trial court that a matrimonial domicile was established in this State, but on the contrary, the trial court found that upon the marriage ceremony being performed " immediately thereafter " the parties left to establish a matrimonial domicile in the State of New Jersey. No authorities have been found to sustain this contention. There is a somewhat analogous situation, however, involving the right to maintain an action for divorce in our courts. In such a case notwithstanding section 1756 of the Code of Civil Procedure (now section 1147 of the Civil Practice Act) which

provides that an action for divorce may be maintained, " 2. Where the parties were married within this State," the authorities hold that the bare fact of a marriage within the State does not confer jurisdiction on our courts. In *Gray* v. *Gray* (143 N. Y. 354) Judge O'BRIEN, speaking for the court, said: " Section 1756 authorizes an action for divorce where the parties were married within this State. The general rule to be derived from principles of universal application is that the courts of this State have no power to adjudge the status of parties residing beyond its jurisdiction. It is not likely that this rule was changed or intended to be changed by the provisions of the Code. Without deciding the question we will assume for the purposes of this appeal that such is the law."

In *Barber* v. *Barber* (89 Misc. 519) Mr. Justice CROUCH held that notwithstanding the provision of the aforesaid section, the bare fact of a marriage ceremony within the State was not sufficient to confer jurisdiction, saying: " It is a well established rule of general jurisprudence that a divorce can be granted only in the country or State wherein the status on which it operates has a domicile. * * * It is true that the Legislature can override that general rule by a statute expressing such intention with unmistakable clearness. And so it is contended here. Whether the act of 1862,* which changed a statute standing on the books for fifty years, was intended to accomplish that result, or whether it was intended merely to make the statute on its face cover the exigency of some particular case, I am not prepared to say. The presumption is against the construction contended for. In view of that fact and of the evil results to follow such construction, and particularly because of the language of the Court of Appeals in *Gray* v. *Gray*, quoted above, I think the mere fact of marriage within the State, irrespective of the residence of the parties, is not sufficient to confer jurisdiction."

It follows that the judgment appealed from should be affirmed, without costs.

CLARKE, P. J., MERRELL and BURR, JJ., concur; MARTIN, J., dissents.

Judgment affirmed, without costs.

---

* See Laws of 1862, chap. 246, § 1, amdg. 2 R. S. 144, § 38, subd. 2.— [REP.