AMELIA FRIEDA DEAN, Respondent, *v.* ROBERT J. DEAN, Appellant.

Fourth Department, June 30, 1925.

Husband and wife — divorce — parties married in Canada — husband became resident of Pennsylvania and procured divorce on service of summons by publication — wife, plaintiff in present action, had no knowledge of that action — husband made false affidavit in Pennsylvania action that he did not know where wife was — husband later came to New York and married — plaintiff then became resident of New York — Pennsylvania divorce not recognized by Canadian courts — Pennsylvania divorce was void — courts of this State not required under United States Constitution, art. 4, § 1, to give full faith and credit to Pennsylvania divorce — Pennsylvania divorce may be attacked on ground of fraud — wife, plaintiff in this action, may maintain action for divorce under Civil Practice Act, § 1147, subd. 4.

A decree of divorce, granted to the defendant in this action on the service of a summons by publication at a time when the plaintiff in this action was a resident of Canada, will be considered invalid by the courts of Canada and also by the courts of this State, since it appears that the parties were married in Canada and that the husband acquired a residence in Pennsylvania for the purpose of procuring a divorce, and that not only was the divorce granted on the service of the summons by publication but also that the wife, the plaintiff in this action for divorce, had no knowledge that her husband had secured a Pennsylvania decree until she came to this State to reside.

The courts of this State are not required under section 1 of article 4 of the United States Constitution, to give full faith and credit to the Pennsylvania decree.

Furthermore, the Pennsylvania decree may be attacked in this action on the ground of fraud in that the defendant, in his action instituted in Pennsylvania,

swore falsely that he did not know at that time where the plaintiff in this action resided.

Accordingly, the plaintiff herein has the right under subdivision 4 of section 1147 of the Civil Practice Act to maintain this action for divorce against her husband, who married after he procured the Pennsylvania decree, since the plaintiff became a resident of this State before the action was begun.

CROUCH and TAYLOR, JJ., dissent, with opinion.

APPEAL by the defendant, Robert J. Dean, from an interlocutory judgment of .the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 15th day of December, 1924, upon the decision of the court rendered after a trial at the Erie Equity Term in an action for divorce.

*O. Clyde Joslin* [*Ray M. Stanley* of counsel], for the appellant.

*J. H. Madden* [*Alfred L. Harrison* of counsel], for the respondent.

CLARK, J.:

This action is for an absolute divorce on statutory grounds. The evidence shows that the parties were married in Kitchener, Ontario, Canada, in November, 1912, and that they lived there as husband and wife until February, 1919, when defendant abandoned plaintiff and went to live with his parents in Buffalo. His claimed reason for going to Buffalo was that his wife's mother, with whom the parties had resided since their marriage, had ill-treated him. This was denied. Defendant also claimed that he urged his wife to accompany him to Buffalo which she refused to do. This was also denied and plaintiff claimed that she urged her husband to provide a place for the family to reside in Canada elsewhere than at her mother's home and this is disputed by the defendant.

Three children were born of the marriage. One has since died and the other two have always lived with their mother, this plaintiff, at Kitchener, Canada, until about March 1, 1924, when plaintiff also moved to Buffalo where she testified she desired and intended to reside.

In 1922 defendant established a residence in Pennsylvania for the evident purpose of bringing an action for divorce against this plaintiff, which he finally procured November 5, 1923, his wife being served with process by publication, but without the knowledge of it, for no papers were served on her, either personally or otherwise.

To obtain the order of publication and also on the trial of the action in the Pennsylvania court, defendant testified that the whereabouts of his wife were unknown to him. This was clearly false for plaintiff had resided continuously since their marriage in Kitchener, Ontario, and this fact must have been known to

defendant, for plaintiff testified on this trial that after defendant had left her, she had frequent conversations with him over the telephone when he was in Buffalo and this was not denied by defendant. Plaintiff testified that when she came to Buffalo to reside about March 1, 1924, she learned for the first time that her husband had procured this Pennsylvania divorce and had remarried and was then living with his second wife in Buffalo.

Then this action for divorce was begun, defendant's second wife being named as corespondent. Defendant appeared in the action and plead the Pennsylvania divorce as a defense. The trial judge in his opinion held that defendant had procured the Pennsylvania divorce through fraud and that it was not binding on this plaintiff and that she could maintain this action and awarded her a decree.

It is undisputed that when defendant obtained his divorce in Pennsylvania, plaintiff was a resident of, and had her domicile in, Canada, and that she was never served with process in the Pennsylvania action, either personally or by mail, and that she did not appear in any way in said action.

Under the circumstances I do not think the Pennsylvania divorce obtained by the defendant against plaintiff was binding on her or that the courts of this State are obliged to give it full faith and credit.

Divorces granted in a foreign State upon substituted service of the summons, where the defendant does not appear, are not recognized by the courts of Canada against a party having a domicile there. (*The King* v. *Brinkley*, 14 Ont. 434.)

Whether defendant's Pennsylvania divorce was valid depended upon the status of the defendant in that case (plaintiff here) at the time it was obtained.

It is not disputed that at the time the Pennsylvania divorce was granted, plaintiff had her domicile in Canada where she had always resided and that she did not appear in the action and was never personally served with process and that the courts of Canada do not recognize such a decree as that obtained by defendant in Pennsylvania and do not give such a decree full force and effect.

That divorce was, therefore, wholly void as to this plaintiff and was ineffectual to affect her status as the wife of the defendant and she continued to be such until the decree in her favor in this action was obtained.

It was for the State or country where she had her domicile when the decree was obtained to determine "how far as to its own citizens the principles of comity shall be applied." (*Ball* v. *Cross*, 231 N. Y. 329.)

Inasmuch as the Pennsylvania court did not acquire jurisdiction of the defendant in that action (plaintiff here) by personal service and the State of Pennsylvania was never her matrimonial domicile, the courts of this State are not required under article 4, section 1, of the Federal Constitution, to give full faith and credit to the Pennsylvania decree obtained by defendant. (*Haddock* v. *Haddock*, 201 U. S. 562; *Bell* v. *Little*, 204 App. Div. 235, 236; *Hubbard* v. *Hubbard*, 228 N. Y. 81; *Matter of Caltabellotta*, 183 App. Div. 753.)

When defendant obtained an order in the Pennsylvania courts to publish the summons upon a false affidavit to the effect that he did not know the whereabouts of his wife, it was with the evident purpose of preventing her (plaintiff here) from knowing anything about the proceeding and it was, therefore, a fraud on the Pennsylvania court and also on this plaintiff, as the trial judge stated in his opinion and the courts of this State can inquire into the proceedings, and, if it appears that the foreign divorce was obtained by fraud, it can be attacked in the courts of this State. (*Hunt* v. *Hunt*, 72 N. Y. 217.)

We are cited to a number of cases, including *Powell* v. *Powell* (211 App. Div. 750) and *Kaufman* v. *Kaufman* (177 id. 162), holding, in substance, that the courts of this State will not refuse to recognize foreign divorces granted on substituted service of process except for the protection of its own citizens domiciled here, and that this plaintiff, when she attacks the foreign divorce granted to defendant in Pennsylvania without personal service on the ground that the Pennsylvania court was without jurisdiction, must show that she was a resident of the State of New York at the time the foreign divorce was obtained.

I do not think we are bound to follow those decisions in view of the facts established in this case and in view of the holding of the Court of Appeals in *Ball* v. *Cross* (*supra*), where it was stated in substance that it is for the State where the party (plaintiff here) had her domicile when the decree was obtained to determine " how far as to its own citizens the principles of comity shall be applied," and in view of the further undisputed fact that when the Pennsylvania decree was obtained by defendant, plaintiff had her domicile in Canada, was not personally served with process, and was in total ignorance of the proceeding, and did not appear in the action, and that a decree thus obtained is in no way recognized by the courts of the State in which she was domiciled at the time it was obtained. (*The King* v. *Brinkley*, *supra*. See, also, *O'Dea* v. *O'Dea*, 101 N. Y. 23.)

Under the facts established in this case, we are not bound to

recognize the Pennsylvania decree obtained by defendant under the principles of comity.

The fact that after that decree was obtained defendant remarried and lived and cohabited with his second wife in this State is not disputed. Plaintiff subsequently became a resident of this State and was such when she began this action, as found by the trial court, and she can maintain the action under subdivision 4 of section 1147 of the Civil Practice Act.

The judgment should be affirmed, with costs.

HUBBS, P. J., and DAVIS, J., concur; CROUCH and TAYLOR, JJ., dissent in an opinion by CROUCH, J.

CROUCH, J.: (dissenting):

Plaintiff and defendant, residents of Ontario, were there married, and there had a matrimonial domicile. They later separated, the defendant coming temporarily into the State of New York, and later going to Pennsylvania, where he established a residence, and secured a divorce upon the ground of desertion. There was no personal service of the process, nor did the wife appear. Shortly after the decree was granted, defendant married another woman in Pennsylvania. At the time of the decree, and also at the time of the marriage, the plaintiff herein was still a resident of Ontario. Subsequently the defendant and his second wife settled in the State of New York. Still later, when she had discovered that fact, plaintiff herein also came into this State, and, as the court below has found, did so for the purpose of gaining a residence here in order to bring this action for divorce.

If I rightly understand the holding about to be made, it is that the marital status of the plaintiff under the Pennsylvania decree and subsequent marriage, was definitely established by the law of Ontario, where she then resided; that that law refused to recognize the validity both of the decree and the marriage; that plaintiff, when she came into the State of New York and became a resident here, brought with her that marital status; and that our courts are bound to recognize it and to protect it.

From that holding I dissent because I find no authority in this State which has gone so far. In *Ball* v. *Cross* (231 N. Y. 329) the court was considering the marital status of a woman who had no domicile in New York. The court said, in substance, that her status under a foreign decree obtained against her by her first husband was to be determined by the law of her domicile at the time the decree was granted. " If the State of which she was then a citizen recognizes such a decree as that obtained in Nevada, and gives it full force and effect, then it is not for us to say that

it is void as to her. It is for that State to determine what its policy requires. It is the final judge as to how far, as to its own citizens, the principles of comity shall be applied. If the defendant is freed of all the obligations of the Missouri marriage in the State of her domicile, she is freed everywhere."

In that language I find no implication that the status so determined would necessarily be conclusive on us should she abandon that domicile and become a citizen of this State. In that event the court would have to deal with the foreign decree as it affected a citizen of this State, not as it affected a citizen of some other State. There would then be involved the public policy of New York. Then, in short, it would be for us, and not for some other State, to say whether effect should or should not be given to the foreign decree. In *Hubbard* v. *Hubbard* (228 N. Y. 81) it was said: " Generally speaking, each State when unrestrained by the Federal Constitution has the right to adjudge and declare the marital status of those residing and domiciled within it. * * * Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy or wrong or injure citizens of the State is exclusively for its courts to determine. They are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality. The exercise rests in sound judicial discretion, guided and controlled by the policy of the State, relevant judicial decisions and the circumstances of the case."

Let us consider those guides as they affect the plaintiff in this case, who was the defendant in the foreign action.

In New York it has long been the settled policy and law to refuse recognition to a foreign judgment affecting the marital status of one of our citizens, based upon grounds insufficient for that purpose here, unless there was personal service of process on, or appearance by him in the foreign jurisdiction; or unless that jurisdiction was the matrimonial domicile. (*Olmsted* v. *Olmsted,* 190 N. Y. 458; affd., 216 U. S. 386; *Winston* v. *Winston,* 165 N. Y. 553.)

But since that rule was formulated only for the protection of the citizens of New York, relevant judicial decisions have said that it might be invoked as a basis of decision only by one who was a citizen of this State at the time the foreign decree was rendered, or at the time when a subsequent marriage was contracted. (*Percival* v. *Percival,* 106 App. Div. 111; affd., 186 N. Y. 587; *Kaufman* v. *Kaufman,* 177 App. Div. 162; *Schenker* v. *Schenker,* 181 id. 621; affd., 228 N. Y. 600; *Kaiser* v. *Kaiser,* 192 App. Div. 400; affd., 233 N. Y. 524; *Powell* v. *Powell,* 211 App. Div. 750.)

In other words, recognition of the validity of such a divorce

decree against a person who was not a citizen of New York at the time, seems to have been as much a part of our public policy as its non-recognition where the one affected was a citizen here.

The decision in *Ball* v. *Cross* (*supra*) has modified the rule of recognition by holding that where the status of a non-resident is in controversy here, we will accept the status as fixed by the law of that person's domicile at the time the decree was made. We may not, in such a case, say that our policy requires us to recognize its validity, because our policy is not at all involved.

The decision of this court in *Matter of Caltabellotta* (183 App. Div. 753), regardless of what was said in the opinion, may be sustained within that modification, because the petitioner, whose status was under consideration, was a citizen of Pennsylvania. She had been a citizen there when the divorce decree and subsequent marriage took place. Her status in the State of her domicile was recognized and accepted by this court.

But, except as so modified, the policy and the law of this State seem to be unchanged. When, subsequent to the foreign decree and marriage, plaintiff came to New York and became a citizen here for the purpose of securing a divorce, she necessarily offered her status for determination by our courts, in accordance with our own public policy. That policy has been to recognize the validity of the foreign decree, except as surrounding circumstances might lead in the interest of justice and morality to a contrary result. If the rule is to be otherwise it is for the court of last resort and not for us to say so.

I find nothing in the surrounding circumstances of this case to render inapplicable the usual rule of recognition. The invalidity of the Pennsylvania decree for fraud is not before us. That issue was not litigated, nor is there any finding thereon. Moreover, the fact that the plaintiff came here solely for the purpose of bringing the action lends color to the apprehension expressed in *Powell* v. *Powell* (*supra*, 756) that New York may become a mecca for certain types of divorce pilgrims.

The judgment should be reversed, and the complaint dismissed.

TAYLOR, J., concurs.

Judgment affirmed, with costs.