## In the Matter of the Estate of ANNA TRIPPODO, Deceased.

Surrogate's Court, New York County, December 2, 1936.

*A. Edward Feeney*, for Charles Farina, brother of deceased, petitioner.

*Julius Leicher*, for the administrator.

DELEHANTY, S. This application to revoke letters of administration is based upon the assertion that the appointed administrator was not the actual husband of deceased as he alleged in the petition on which he was appointed.

Deceased intermarried with Charles Riscili in April, 1901, and following such marriage they maintained a matrimonial domicile in the State of New York until 1925. No decree dissolving that marriage has ever been entered in the State of New York. Charles Riscili was called as a witness and testified that he left his wife on July 22, 1925, and went to Chicago and that he never saw her

thereafter. He thereafter had letters from her dated respectively at New York city, at a point in New Jersey and at a point in Florida. He last heard from her in 1927. He learned in 1928 that his wife had married John Trippodo. From the date of his leaving deceased he lived in Illinois and never returned to New York until called as a witness. He never sought a divorce from deceased.

After Charles Riscili had been absent about a year his wife, the deceased, went to New Jersey to live with a brother. After some extended period of residence there the whole household in New Jersey went to a town in Georgia where they resided for a further period of years. Deceased thereafter went to Florida. In that State on November 10, 1928, she obtained a decree of divorce which was based on service of process by publication upon Charles Riscili. She intermarried with John Trippodo in the State of Florida on December 8, 1928. From a date soon after that marriage and until her death she lived with John Trippodo in a matrimonial domicile in New York. Letters of administration were issued to John Trippodo as the surviving husband of deceased.

The question presented is whether or not the respondent John Trippodo was validly married to deceased and has an interest in her estate as distributee because of that marriage.

The proof establishes that deceased either was abandoned by her husband, Charles Riscili, or that he by his own voluntary act terminated the matrimonial domicile and consented that his wife make her domicile where she chose. Charles Riscili neither invited his wife to join him in Illinois nor furnished her the means with which to do so. He contributed nothing to her support from 1925 to her death. He plainly undertook to go his separate way and left her to do likewise. From and after 1925 there was no matrimonial domicile maintained anywhere. In that set of circumstances deceased was entitled to fix her own domicile as if she were a single person. After 1925 she had a separate domicile in New York State, a later domicile in New Jersey, a still later domicile in Georgia, a further domicile in Florida and a final domicile in New York State. At no time after leaving New York State in 1927 did she return to New York State for the purpose of residing here until after the decree of divorce rendered by the Florida court and after her remarriage in Florida.

While deceased could not have obtained a dissolution of her marriage to Charles Riscili in this State on the basis of any proof presented in this record, there is on such proof no public policy of this State which forbade her resort to the courts of any other State in which she had lawfully acquired a domicile. The matrimonial *res* having been destroyed, there was no power or right

in this State to regulate the matrimonial relations of these parties after both left this State even though they had originally established their matrimonial domicile here. The freedom to change her domicile which Charles Riscili's conduct had granted to deceased gave her all the incidental rights which would attach to the new domicile when she acquired it (Restatement of the Law of Conflict of Laws, § 28; *Dean* v. *Dean*, 241 N. Y. 240, 244; *Williamson* v. *Osenton*, 232 U. S. 619.)

As matter of comity the divorce decree of the Florida court is entitled to respect here unless there is some interest of this State in the parties which survives their abandonment of this State as a place of domicile. This State should give full effect to the Florida decree if before she procured it deceased was free to change her domicile from this State and had in fact established a domicile in Florida. Since that State in its public policy permits the granting of a decree under circumstances presented by this record, this State will recognize its decree as matter of comity and not because of constitutional constraint to do so. Nothing in the so-called special New York rule on divorces operates to the contrary. (*Hubbard* v. *Hubbard*, 228 N. Y. 81; *Powell* v. *Powell*, 211 App. Div. 750; *Ball* v. *Cross*, 231 N. Y. 329, 331; *Gould* v. *Gould*, 235 id. 14, 25; *Richards* v. *Richards*, 132 Misc. 551; affd., 225 App. Div. 726; *North* v. *North*, 47 Misc. 180. Compare Restatement of the Law of Conflict of Laws, § 113.)

Accordingly it is held that the Florida divorce is valid and that at the time of her death deceased was validly married to John Trippodo. This finding necessitates dismissal of this proceeding.

Submit, on notice, decree accordingly.