Nicholas M. Pette, J.
The plaintiff and the defendant, Aime Le Gault, were married on December 23, 1933 in the city of Charleston, West Virginia, where both resided at that time. One child was born of this union, Robert, now past 21 years of age. The parties subsequently resided in Detroit, Michigan, and then in Anderson, Indiana, from which locality plaintiff’s husband joined the United States Merchant Marine in May, 1943. The plaintiff, however, stayed in Anderson, Indiana, until 1946 when she moved to New Bedford, Massachusetts, where her husband was born. In 1949 Mr. Le Gault was discharged from the Merchant Marine service in New York City which was his home port. He established a merchant marine pump and valve installation business in that city under the name of Le Gault & Company, which was changed in 1953 to Port Service Corporation. He set up his home in New York City while the plaintiff and their son continued to live in New Bedford, where he visited her from time to time.
On August 1, 1955 Mr. Le Gault obtained a decree in the Circuit Court of Russell County, Alabama, divorcing him from the plaintiff on the ground of her “ Voluntary abandonment from bed and board for more than one year.” On September 2, 1955 he married his codefendant, Virginia Schoerlin, in a church in Queens Village, County of Queens, New York.
In October, 1956 the plaintiff brought this action against her husband and the lady he married subsequent to his purported Alabama decree of divorce. She seeks judgment (1) declaring that decree to be invalid and of no force and effect because of lack of jurisdiction, (2) annulling the marriage between the defendants upon the ground that at the time it was solemnized, the male defendant had not been duly divorced from the plaintiff, and (3) granting the plaintiff a separation on the grounds of abandonment, nonsupport and adultery. The defendants’ answer is a general denial.
At the conclusion of the plaintiff’s case, the court reserved decision on the defendants’ motion to dismiss, whereupon the defendants rested and renewed their motions to dismiss, upon which decision was again reserved.
There can be no question of the power of this court to adjudicate marital status by way of a declaratory judgment *84 when the circumstances render it useful and necessary, and where it will serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations. (Somberg v. Somberg, 263 N. Y. 1, 4-5; Lowe v. Lowe, 265 N. Y. 197; Baumann v. Baumann, 250 N. Y. 382; Long v. Long, 281 App. Div. 254, 256.) Since jurisdiction to pronounce a declaratory judgment lies in judicial discretion (Rules Civ. Prac., rule 212), the defendants raise the threshold objection that this court should not exercise such discretion because neither the plaintiff nor the defendant, Aime Le Gault, resided in this State up to and including May, 1943, nor at any time lived in this State as husband and wife and that at no time was the plaintiff a resident thereof.
Section 1165-a of the Civil Practice Act, which prescribes the conditions for the maintenance of an action for annulment or separation, provides in subdivision 3 that such actions may be maintained in this State: ‘£ Where the parties were married without the state, and either the plaintiff or the defendant is a resident of the state when the action is commenced, and has been a resident thereof for at least one year continuously at any time prior to the commencement of the action.” There is no question that the defendant, Aime Le Gault, was a resident of this State when the action was commenced and for at least one year continuously prior to such commencement. Certainly then, this court has jurisdiction with respect to the causes of action for a separation. Inasmuch as the primary fact to be proved in such an action is an existing marriage between the parties (Fischer v. Fischer, 254 N. Y. 463, 466; Cherubino v. Cherubino, 284 App. Div. 731, 732) and the defendant, Aime Le Gault, has denied plaintiff’s allegations that he and she still are husband and wife and that no decree of divorce has been obtained by him against her in any court of competent jurisdiction of this State or any other State, territory or dependency of the United States, or any foreign country, the question of the validity of the Alabama decree of divorce is necessarily presented, even if the causes for separation alone were before this court. (See Statter v. Statter, 2 N Y 2d 668.)
Denkman v. Denkman (172 Misc. 57, affd. 258 App. Div. 954), relied upon by the defendants, is distinguishable. In that case, the court found no basis for assuming jurisdiction of an action to declare the nullity of a Nevada divorce and that the parties still were husband and wife since neither resided in New York. While, as here, the parties to that action married outside the State, the defendant divorced the plaintiff in another State and the parties never had any marital domicile in New York, the *85 husband, unlike Mr. Le Gault, never lived, had an office, nor any property in New York and the defendant wife married another in New Jersey where they established their matrimonial domicile and continued to reside even as of the time of trial. In addition, folloAving the decree of divorce, the parties thereto entered into an agreement by which the plaintiff husband, in that case, secured a release of all his marital obligations to the defendant as well as of her half interest as a tenant with him by the entirety of certain real property and furniture. The agreement contained a recital to the effect that the parties recognized the validity of the decree of divorce and that both admitted “ that by virtue thereof they are now single persons and unmarried.” While this agreement could not have any effect on the validity of the divorce, it was presented as a strong, equitable reason why the court should not exercise jurisdiction to pronounce a declaratory judgment.
In the case at bar, we not only have a cause of action for a declaratory judgment but causes to annul the marriage between the defendants and for a judicial separation against the defendant, Aime Le Gault, who has been in business in New York continuously since 1947 and married his codefendant in that State on September 2, 1955, where both have resided and continue to reside as husband and wife. The late Mr. Justice Shiextag, who wrote the opinion in the Denkman case (supra) in Special Term, observed at page 60: “ The cases in which jurisdiction has been exercised are those where there was an existing New York res, such as a New York marriage, a New York marital domicile, a New York plaintiff, or Nbav York property owned by the plaintiff or where the defendant located in New Yorh owed a present financial obligation to the plaintiff for support or otherwise, or where there were children in this State who were wards of the State.” (Emphasis supplied.) Here the defendant’s obligations to the plaintiff were not extinguished, and if she prevails in this action she will be entitled to financial support from her husband and to share in his estate upon his death.
Engel v. Engel (275 App. Div. 14), likewise relied upon by the defendants, Avas an action solely to declare a foreign judgment of divorce to be invalid. There, too, the parties were married outside of New York and the defendant, who later obtained an out-of-State decree of divorce, returned to her residence in New York where she married a resident of that State which then became their matrimonial domicile. She owned real and personal property in New York under whose Iuavs the plaintiff had certain rights and interests. Under these *86 circumstances the Appellate Division of the First Department, in a unanimous opinion written by Mr. Justice Shieettag, held that the court below was justified in entertaining the action for a declaratory judgment to adjudge marital status. The court observed, at page 16, that unlike an action for divorce or separation, there are no special statutory jurisdictional requirements in an action for a declaratory judgment and that: ‘ ‘ The plaintiff, though a nonresident, has the legal capacity to sue, and the court has jurisdiction of the subject matter in the sense that it has power to enter a judgment in an action of this character ”.
For all of the' foregoing reasons there is a sufficient basis in the instant case for the court taking jurisdiction of the cause of action to adjudicate the nullity of the Alabama decree of divorce at the same time that it disposes of the matrimonial causes of action.
Judicial power to grant an ex parte divorce is founded on the domicile of at least one of the spouses in the divorce granting State. (William v. North Carolina [I], 317 U. S. 287.) The decreeing State, however, cannot foreclose the subsequent readjudication of the question of domicile by another State. (William v. North Carolina [II], 325 U. S. 226.) Before a collateral attack may be made upon such a decree, the jurisdiction of the rendering court first must be shown to be vulnerable, i.e., that the defendant in the divorce action was neither served with process in the foreign State nor appeared therein or participated in the action on its merits. (Cook v. Cook, 342 U. S. 126.) The burden of undermining the divorce decree “ rests heavily upon the assailant.” (Williams v. North Carolina [II], supra, pp. 233-234.) Specifically, that burden is “to overthrow the apparent jurisdictional validity of the * * * divorce decree by disproving * * * intention to establish a domicile ” in the granting State. (Ibid; Matter of Franklin v. Franklin, 295 N. Y. 431, 434.)
Plaintiff’s attack upon Alabama’s jurisdiction to grant the divorce here involved, is two-pronged — (a) the absence of domicile and (b) lack of due process. The court finds that the plaintiff was not personally served with process either in Alabama or anywhere else; that she did not appear in the divorce action nor did she in any way participate therein on its merits. The foregoing facts were established not alone by the uncontradicted testimony of the plaintiff, but by the judgment roll of the divorce action, an exemplified copy of which was received in evidence. In his complaint filed in Alabama on May 24, 1955, Mr. Le Gault stated that this plaintiff- — the *87 defendant in the divorce action — “ is a non resident of the State of Alabama and her place of residence and address is unknown to your Complainant.” As a result of this claim an order was made on May 24, 1955 by the Alabama Circuit Court directing process to be served by publication in the ‘ ‘ Phenix-Girard Journal a newspaper published in and having a general circulation in Bussell County, Alabama.”
A ‘‘ Decree Pro Confesso on Publication” was thereupon filed on July 28, 1955, and on the same date an order was made directing the oral deposition of Virginia Schoerlin (now the codefendant in this action) to be taken in New York as a witness for the complainant in the divorce action. Her deposition was taken on July 30, 1955 at 401 Broadway, New York City, and on August 1, 1955 Mr. Le Gault appeared before the Register of the Circuit Court of Russell County, Alabama, and gave his deposition to the effect, among other things, that plaintiff “ is a non-resident of the State of Alabama and her address and place of residence is unknown to me and cannot be ascertained after diligent inquiry and service; ’ ’ and that he, Aime Le Gault, is “ a bona fide resident of Russell County and the State of Alabam [sic] and have been a bona fide resident of Russell County in the State of Alabama since on or about April 1, 1954 and for more than one year next preceding the filing of my bill of complaint in this case.” He also stated that he resides at 1721 Holland Street in Phenix City, Alabama. The final decree of divorce was rendered the same date — August 1, 1955.
Although Mr. Le Gault swore as aforesaid that he was a bona fide resident of Russell County, Alabama, since on or about April 1, 1954 and for more than one year next preceding the filing of his complaint, the proof before this court is otherwise. Indeed he, himself, testified upon an examination before trial that he began visiting Alabama on business in 1952, and that never did he remain there for more than a week at a time. He had no residence address in that State and ‘ ‘ usually stayed at motels and hotels.” He admitted that the address, 1721 Holland Street, Phenix City, Alabama, which he gave as his residence in his August 1, 1955 deposition, was only a motel which he thought was named “ Sam’s ” and in which he “ never stayed * * * any longer than over night.” He stated that he was in Alabama at least 15 times during 1954 but that his only mailing address was his office in New York. He admitted, however, that his mailing address in 1952 was 85 Washington Street, Borough of Manhattan, New York, where he lived during the last six months of 1951, and that he moved to an address in Brooklyn, New York, in February, 1955, where he lived until *88 August 1, 1955, when he moved into his present apartment in Briarwood, Jamaica, New York, under a three-year lease signed that date.
He never had any bank account nor any other property in Alabama, and his automobile was at all times registered from his business address in New York. He never voted in Alabama nor belonged to any clubs in that State. Since 1946 he has been a member of the Port Engineers Club in New York City, and since 1951 of the Marine Square Club, likewise in that city. His 1954 Federal income tax return shows that his home residence was 7915 Third Avenue, Brooklyn, New York, and his 1955 return, his apartment in Briarwood. He admitted that when he made out his 1954 tax return in March, 1955, he lived at the Brooklyn address set forth therein and that he maintained bank accounts in New York in 1954 and in 1955.
It is clear from the foregoing admissions by the defendant, himself, not to mention the testimony given by the plaintiff, which he made no attempt to contradict, that he never was domiciled in Alabama either on August 1, 1955 or' for any time prior thereto. His business, his property, his clubs, in short, his roots were in New York, at least since his discharge from the United States Merchant Marine in 1947. His periodic business visits to Alabama, among other places, where he stayed in hotels or motels, never longer than a week at a time, hardly spell out 1 ‘ the idea of a residence sufficiently permanent that its termination is not presently contemplated.” (Burch v. Burch, 195 F. 2d 799, 805.) “Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one’s domicile.” (Matter of Newcomb, 192 N. Y. 238, 250.)
At most, Alabama was the temporary residence of the defendant, Aime Le Gault, whenever he was there on business. Jurisdiction to decree the divorce herein was not conferred, however, upon the courts of Alabama by such residence, no matter how frequent his visits. The fact remains that on the very day that he obtained the decree he signed a three-year lease to a New York apartment where he now lives with his codefendant as man and wife, having married her in Queens County, New York, on September 2, 1955, under a license issued in Brooklyn, New York, on August 22, 1955, only three weeks after he obtained his decree of divorce. Since the weight of evidence clearly supports a finding that when he brought his action for *89 divorce in Alabama, Mr. Le Gault was not domiciled there and the decree was at best based on the service of process by publication, it is not entitled to recognition here. (Aspromonte v. Aspromonte, 4 A D 2d 689; Reese v. Reese, 268 App. Div. 993.)
The court is further of the opinion that the Alabama divorce decree is invalid for lack of due process. Service of process by publication, permissible by local law, satisfies the requirement of due process where it reasonably is calculated to give the defendant notice of the proceedings and an opportunity to be heard. (Williams v. North Carolina [I]), supra; Milliken v. Meyer, 311 U. S. 457; Dalton v. Dalton, 270 App. Div. 269, 273.) Here, however, the conclusion is inescapable that the defendant, Aime Le Gault, concealed from the Alabama court the fact that he knew the precise address where the plaintiff lived both on May 24, 1955, when he stated in his complaint in the divorce action that her place of residence and address were unknown to him, and in his deposition of August 1, 1955, when he made a similar statement, adding that plaintiff’s address “ cannot be ascertained after diligent inquiry and search.”
As a matter of fact, the uncontradicted proof is that after several years of unsuccessful attempts on the part of the plaintiff to have her husband set up a home in New York where they and their son could live, the defendant insisted that New York was no place to raise their child, and that she should go back to her original home in Roanoke, Virginia. She did so sometime in 1950 on her husband’s promise to make some arrangements whereby the family could reside together. This he never did, although he continued to see her both in New York and in Virginia. In fact, in 1954 when the plaintiff was hospitalized at the Roanoke Memorial Hospital in Virginia, he personally took her home from the hospital. At least, during that year and in 1955, he regularly sent letters to her twice a month, containing checks for her support and the support of their child, addressed to her home, 1247 Tayloe Avenue, S. E., Roanoke, Virginia. He continued to send such checks to that address even after he obtained the divorce and married his codefendant. It was not until August, 1956 that plaintiff first learned that she had been divorced. In a letter postmarked at Brooklyn, New York, on August 10, 1956 and addressed to her at her Roanoke address he wrote plaintiff in part as follows:
“ This letter should have been written a long time ago but I kept putting it off but I can’t see any reason to put it off any longer. For many years I’ve asked you for a divorce, but always the same answer no. Well I took the necessary legal steps and obtained a divorce that is legal and recognized by the *90 State of N. Y. then I obtained my marriage license in NYC and was married in Long Island.
“ Now I know that your going to get yonr dandruff up and your going to do this and do that, well I will advise you not too. I’m surprised you haven’t found out from my family because they’ve known from the beginning and when I no longer heard from Robert I figured well he no longer wants to be bothered with me. You see I’ve been sending you your 200.00 a month right along although you no longer have Robert to support (or do you) and now I can no longer send that amount but I will send you 100.00 per month from now on. You see I cannot take you as a dependant [sic] and the 2400.00 I sent you I had to pay tax on that all these years. * * * I know you declare it in your income, too with Grovernment records these days one can’t afford to fool around.
“ Now the 100.00 per month you will receive as long as you want that is as long as you dont get bright ideas that your going to cause me trouble, because if anything like that happens the monthly checks stop and with 2400.00 a year to pay my lawyers I can get a lot of service.
* * *
“ Well I hope I wont be receiving a flock of nasty letters now, I sincerely hope you’ll accept this in your stride of life.”
It is clear, therefore, that the defendant had deceived the Alabama court when he represented that plaintiff’s address and place of residence was unknown to him “ and cannot be ascertained after diligent inquiry and search.” That statement was obviously designed to conceal the pendency of the action from the plaintiff and had its desired effect. As was recently held by the. Appellate Division, Third Department, in Hoyt v. Hoyt (286 App. Div. 580, 582), which involved a Pennsylvania decree of divorce: “ The defendant’s fraud vitiated the service of process, which was attempted to be made in accordance with the false information supplied by him. The Pennsylvania court therefore never obtained jurisdiction over the plaintiff and the judgment of the Pennsylvania court may be collaterally attacked in this State (Dean v. Dean, 213 App. Div. 360, 363, affd. on other grounds 241 N. Y. 240; Stanton v. Crosby, 9 Hun 370; see, also, Cortese v. Cortese, 163 Pa. Super. 553).”
The plaintiff is accordingly entitled to judgment declaring that the Alabama decree of divorce procured by her husband on August 1, 1955 was invalid and of no force and effect whatsoever and that she continues to be and still is his lawful wife. Since the plaintiff had not been validly divorced by her husband, *91 he was incapable of entering into a marriage contract with his codefendant, Virginia Schoerlin. (Domestic Relations Law, § 6, subd. 1; Matter of Renzo v. Reid Ice Cream Corp., 254 App. Div. 794; Matter of Wood, 203 Misc. 809; Risk v. Risk, 169 Misc. 287.) The court finds that the ceremonial marriage which took place between the defendants is void and that the plaintiff is entitled to judgment annulling the same. (Civ. Prac. Act, § 1134.)
Since the plaintiff is still the wife of the defendant, Aime Le Gault, she is entitled to a judgment of separation based upon abandonment, nonsupport and adultery. The court finds that the plaintiff has in good faith always been ready, willing and capable of living with said defendant as man and wife, but that he refused to do so, and failed to support her ever since she sought legal redress in our courts. In Hoyt v. Hoyt (supra, p. 582), where the question as to the sufficiency of the proof of the commission of adultery was raised under similar circumstances, the court held: “ The proof of the remarriage of the defendant subsequent to the obtaining of the Pennsylvania divorce and of his residing with the alleged second wife was sufficient to presume an inference of adultery.” In Aspromonte v. Aspromonte (4 A D 2d 689, supra), the Appellate Division of the Second Department held that the plaintiff was entitled to judgment of separation upon proof of her husband’s “ subsequent remarriage and his residing with his alleged second wife
While there was no specific proof of the financial circumstances of the defendant husband, photostatic copies of his income tax returns for the years 1954 and 1955, show that he received wages of $8,100 for each of said years from the Port Service Corporation. The defendant’s failure to testify as to his present earnings gives rise to an inference that his income has not diminished (Richardson on Evidence [8th ed.], § 92, pp. 64-67), particularly in view of the offer in his letter of August 10, 1957 to continue paying plaintiff $100 per month “ as long as you dont get bright ideas that your going to cause me trouble ”. Taking into consideration plaintiff’s present employment as a graduate nurse in the Veterans’ Administration Hospital in Roanoke, Virginia, receiving a net take-home pay of $117 every two weeks, she is allowed permanent alimony in the sum of $25 per week. She is also allowed an additional counsel fee of $250 in accordance with the reservation made by Special Term in its order dated January 10, 1957. All motions by the defendants upon which decision was reserved are denied *92 with appropriate exceptions and judgment in accordance with this opinion will be rendered as prayed for in plaintiff’s complaint.
This constitues the decision of the court within the meaning of section 440 of the Civil Practice Act.
Settle judgment.